THE NORTH HUDSON COUNTY RAILROAD COMPANY, appellants,

and

HENRY A. BOORAEM and others, respondents.

1. Where a railroad company, having power to acquire lands for its
use, has been permitted by the owner to enter into possession and
construct its track upon the premises without compensation first made,
in subsequent proceedings to condemn, the measure of compensation
is the value of the land and damages at the time of the entry, and
interest from such entry, irrespective of the improvements afterwards
put upon it by the company.

North Hudson County R. R. Co. *v.* Booraem.

2. A railroad company having entered into possession of lands by consent of the owner, under an agreement with him to purchase, on the foreclosure of a prior mortgage of which the company had constructive notice, the company is bound to contribute to the payment of the mortgage to the extent of the value of the part appropriated by it, and damages, at the time of such appropriation, with interest thereon, without regard to the condition of the premises at the time of the foreclosure or the improvements put thereon by the company; and the value of the land and damages may be ascertained by proceedings to condemn, under its charter, instituted after the foreclosure bill is filed, or by a reference to a master.

On appeal from a decree of the court of chancery.

The case below is reported in 12 *C. E. Gr.* 372, under the name of *Booraem* v. *Wood.*

*Mr. R. Gilchrist* and *Mr. A. Browning*, for the appellants.

*Mr. L. Zabriskie* and *Mr. B. Williamson*, for the complainants.

*Mr. C. Parker* and *Mr. R. Wayne Parker*, for the Erie Railway Company.

DEPUE, J.

The complainants' bill was filed to foreclose a purchase money mortgage made by Wood to Cornelia Booraem, one of the complainants. The mortgage was dated January 24th, 1867, for $150,000, payable January 24th, 1877, with interest payable semi-annually; the whole principal to become due on default in the payment of the interest within thirty days after the same became due. By reason of the non-payment of interest falling due on the 24th of January, 1875, the whole principal money became due, and the complainants, on the 25th of November, 1875, filed a bill of foreclosure, praying a decree for the sale of the mortgaged premises for the payment of the balance of the unpaid principal

money amounting to $110,000, and the arrearages of interest. To this bill the Erie Railway Company and the appellants, among others, were made defendants.

The Erie Railway Company became the owner of part of the mortgaged premises under a deed of conveyance by Wood and wife to the Hoboken Land and Improvement Company, dated March 10th, 1869.

The appellants are in possession of a part of the mortgaged premises on which they have erected an inclined plane and elevator, with an engine and machinery for transporting their cars up and down Bergen hill. The cost of these improvements was about $75,000. At the time of incurring this outlay the appellants had constructive notice of the complainants' mortgage, from the fact that the same was then on record, but had not actual notice thereof.

After the foreclosure bill was filed the appellants proceeded to condemn the land whereon these improvements were made. The commissioners appointed in the condemnation proceedings appraised the land and damages at the sum of $10,047.87. They appraised the value of the land as it was when the appellants took possession—excluding the value of the improvements—and allowed interest from the time possession was taken.

The only question discussed on the argument was, whether the sum awarded by the commissioners or otherwise ascertained as the value of the land without the improvements, shall, for the purposes of this suit, be regarded as substituted for the land held by the appellants, or whether the complainants are entitled to have the land and the improvements on it sold for the payment of the mortgage. In this question the Erie Railway Company is interested as the owner of part of the mortgaged premises liable for the mortgaged debt, in case of a failure to make the same out of such parts thereof as remained in the mortgagor, after conveyance to the said company.

The appellants were incorporated in 1859, under the name of the West Hoboken and Hoboken Passenger Railway

Company, with power to construct and operate a railroad, and to acquire the lands necessary therefor by purchase or condemnation.  *P. L.* 1859, p. 585.  In 1863, the company filed a location of its route over the premises now covered by the mortgage, and (Booraem being then the owner in fee) acquired title thereto by condemnation, and constructed a railroad thereon.  It will be assumed that by such location and condemnation the power of condemnation under the act of 1859 was suspended until, revived by legislation, permission was given to the company to make a new location of its route.

In the early part of 1873, after the complainant's mortgage was made and recorded, the company and Wood, the then owner, made an agreement by parol for the exchange of the route so acquired for a new location on the line now in question, on which it was understood the company would construct an inclined plane or elevator to shorten its route and facilitate the ascent and descent of the hill.  Under this arrangement the company, with the consent of Wood, took possession, and began the construction of the elevator in June, 1873, and completed it on the 21st of November, 1873. During the progress of the work the company, on the 27th of March, 1874, obtained a supplement to its charter, authorizing a change of location, the construction of additional tracks, and of one or more elevators for the ascent and descent of the Bergen and Weehawken hills, providing for the filing of maps of routes thereafter to be adopted when the right of way could not be obtained by purchase, and empowering the company to acquire by condemnation the lands necessary for the execution of the powers granted by the act.  *P. L.* 1874, p. 1264.  In this act, the elevator and the tracks necessary to connect with it, then in the course of construction, were mentioned in such terms as clearly amounted to a legislative recognition of the power of the company to construct them.  Under this act the company instituted the proceedings for condemnation, pending the suit for foreclosure.

30

The construction and use of the inclined plane and elevator and tracks connected therewith for the transportation of passengers, were undeniably a legitimate exercise of the franchises granted by the company's original charter. The entry upon and occupation of the land for that purpose, were not acts of trespass. Whatever was done was by the assent, if not procurement, of Wood, under an agreement with him, founded on a valuable consideration, which might have been specifically enforced in equity. The mortgagee had not at that time any actual estate in the land, and the company had not in fact any notice of the existence of the mortgage. Under these circumstances the possession of the company was a lawful possession, and the conduct of its officers throughout the whole of their proceedings was characterized by good faith. The maxim *quicquid plantatur solo, solo cedet* is not of universal application. Where a party lawfully in possession under an imperfect title has made permanent improvements in good faith, if relief is sought in equity by the real owner, he will be compelled to allow for such improvements as a substantial benefit which he ought, *ex æquo et bono*, to make compensation for. 2 *Story Eq.*, § 1237.

This equitable doctrine is peculiarly applicable to condemnation under the right of eminent domain, where possession has been taken under an arrangement to purchase, which is defeated by some impediment not anticipated, and money has been expended in the construction of works on the faith of such arrangement being consummated.

The right of the state or its representatives to take property for public uses is unlimited in its scope. It extends to property of every kind and description, and is qualified only by the constitutional prescription that just compensation shall be made. Where a corporation to which such right has been delegated has not been admitted into possession, the value of the land taken and damages as of the date of the commissioners' report, by force of which the title is divested, is the legal rule for ascertaining the damages. *Mettler* v. *E. & A. R. R. Co.*, 8 *Vr.* 222. But where the company

North Hudson County R. R. Co. v. Booraem.

has taken possession by the consent of the owner, and has expended money in the adaptation of the land to the proposed use, and altered and changed its condition, this rule manifestly is not adapted to reach the just compensation contemplated by the constitutional provision. It would obviously be unjust to the owner of the land in many cases to compel him to accept its market value in its altered condition. Suppose the land was valuable for building or farming purposes, and, by reason of cuts and embankments made by the company, it was rendered intrinsically worthless, it would be unjust to compel the owner to accept as compensation its intrinsic value in that condition. That result would necessarily be reached if the valuation of the land was, under such circumstances, to be made as of the time when the condemnation was effected; for the owner of the land could not legally become invested with the benefits derived from the franchises of the corporation by reason of the location of its road over his land, and the company could choose its own time for the condemnation, and might do so when the land was most depreciated in its market value because of the changes wrought in it. On the other hand, to compel the corporation to pay, as the value of the land, an increased price because of the improvements made by it, would be unjust to it. The owner has no claim in justice to have expenditures for such purposes enure to his benefit. Under such circumstances he is entitled to be paid the damages he has sustained, and nothing more. That will be represented by the value of the land as it was before it was changed in its condition, irrespective of the structure put upon it by the corporation, and interest from that time. Neither in law nor in equity is the owner entitled to anything more.

It has accordingly been held that where a railroad company is in possession lawfully, and constructs a track on the premises, in subsequent proceedings to condemn, the owner is not entitled to have the value of the structure included in his damages. *California Pacific Railroad Co.* v. *Armstrong,* 46

*Cal.* 85. And if the company has acquired the title of the owner, on a foreclosure of a prior mortgage, of which it has had constructive notice only, the company is bound to contribute to the payment of the mortgage debt, if the same be not paid by the sale, in the inverse order of alienation of other property covered by the mortgage, to the extent of the value of the part appropriated by it at the time of the appropriation, with interest thereon, irrespective of the improvements put thereon by the company. *Dows* v. *Congdon,* 16 *How. Prac. Rep.* 571; *Kennedy* v. *Milwaukee & St. P. R. R. Co.,* 22 *Wis.* 581; *Daniels* v. *C., I. & N. R. R. Co.,* 41 *Iowa* 52. The principle on which these cases were decided has received the sanction of high authority in this state, and may be considered as the settled law of the state. The order of reference signed by the chancellor, in *Trenton Water Power Co.* v. *Chambers,* 1 *Stock.* 471, as will appear by the report of the same case on a subsequent occasion, in 2 *Beas.* 199, was that the master should make an estimate and appraisement of the value of the lands at the time they were taken and the damages sustained. And in *Coster* v. *N. J. R. R. & Tr. Co.,* 3 *Zab.* 227, 4 *Zab.* 730, the proceedings to condemn were instituted fifteen years after the company had constructed its railroad, and it was assumed that the land, irrespective of the track laid upon it, was the proper subject matter of compensation. It manifestly was not contemplated by the court or counsel that the value of the canal constructed by the water company, or of the water power of which it was a necessary part, in the one case, or the value of the track laid by the railroad company in the other case, should enter into the compensation to be awarded to the owner for his lands. In the last case the contention was with respect to compensation for the occupancy of the land prior to the condemnation.

That the company did not institute proceedings for condemnation until this bill was filed, ought not to deprive it of the right to have the compensation to be made ascertained on correct principles. The strip taken is of inconsiderable

value as compared with the whole mortgaged premises, and it was obviously contemplated that Wood would be able to carry into effect his arrangement with the company. Until his financial embarrassments made that result unattainable, and the mortgagee proceeded to a foreclosure, there was no necessity for a condemnation. The commencement of legal proceedings which might oust the company from the premises presents no bar, and there are no circumstances on which to base an equity that the company shall forfeit the large expenditure incurred. Indeed, the appellants might have obtained their relief in the court of chancery, and in this suit, without ever having taken the statutory proceedings to condemn. In *Trenton Water Power Company* v. *Chambers*, an action at law was brought by the owner, and the court of chancery stayed the suit by injunction, in order to enable the company to obtain title by the aid of that court on paying the value of the land and damages, as of the time of possession taken, to be ascertained by that court, either by an issue, or by a reference to a master. In *Dows* v. *Congdon*, relief was afforded in the foreclosure suit. A reference was ordered to ascertain the amount the company should contribute towards the payment of the mortgage debt, and the valuation of the land and interest was adopted as the basis of that ascertainment. The marshalling of securities and determination of the part each shall contribute to the satisfaction of the common burden, is peculiarly within the cognizance of courts of equity, and is a procedure germane to suits instituted for the foreclosure of mortgages.

But the statutory proceeding to condemn having been taken, and Wood and the mortgagee being parties to it, they are concluded by the appraisement of the commissioners. If dissatisfied with the valuation made, their remedy was by appeal as provided for in the company's charter. The report of the commissioners, or the verdict of the jury, is made plenary evidence of the right of the company to the land, and of the other parties to the sum awarded. If the rights of other parties were not involved, the commissioners' valu-

ation would be final and conclusive in this suit, unless some reason should be made to appear, within the jurisdiction of the court of chancery, to set it aside. But the Erie Railway Company was not a party to the condemnation. It had no interest in the premises except such as was derived from the marshalling of the securities in the application of them to the mortgage debt. That marshalling of securities was one of the objects of this suit, which was pending when the condemnation was made. Not having been heard in the condemnation proceedings, that company should have an opportunity of controverting the fairness and justice of the appraisement made. On proper application, an order of reference may be made which shall include a determination anew of the amount the appellants should contribute to the mortgage debt. But in any event, and however the valuation be made, the appellants are bound to contribute towards the mortgage debt on the basis of the value of the land and damages as of the time of possession taken, and interest, irrespective of the improvements on it.

Nor have the appellants forfeited their right to have the valuation made in this manner, by the failure to tender the sum awarded. Its obligation to pay anything under the arrangement with Wood is contingent upon the inability of the mortgagee to make the mortgage money out of the residue of the mortgaged premises, which may in equity be the primary fund for its payment. In case it be necessary to resort to the appellants' land for any deficiency, the amount they are bound to contribute being ascertained, may be charged thereon, and in case the same be not paid, a decree may be made for the sale thereof to raise such sum.

The decree should be reversed, with costs in this court.

*Decree unanimously reversed.*