STATE OF NEW JERSEY, BY THE STATE HIGHWAY COM-
MISSIONER, PLAINTIFF-APPELLANT, v. J. WILLIAM
JONES, WIDOWER, AND E. RUTH JONES, DEFEND-
ANTS-RESPONDENTS, AND AMERICAN ADVERTISING
CO., A CORPORATION, *ET AL.*, DEFENDANTS.

Argued May 5, 1958—Decided June 2, 1958.

Mr. *David M. Salz, Jr.,* Deputy Attorney-General, argued the cause for the appellant.

Mr. *Theodore D. Parsons* argued the cause for the respondents (*Messrs. Parsons, Labrecque, Canzona & Combs,* attorneys; *Thomas J. Smith,* of counsel).

The opinion of the court was delivered by
JACOBS, J.   The Law Division, on an appeal from an award by condemnation commissioners, determined that the just compensation to be paid for the taking of property of

the respondent J. William Jones was $15,000 plus interest. The plaintiff appealed to the Appellate Division and we certified under R. R. 1:10–1(a).

The respondent J. William Jones owned land in the Borough of West Long Branch which had a frontage of 100 feet on the northerly side of Oceanport Avenue. The easterly side of the property ran parallel to Salem Avenue which intersected Oceanport Avenue. A corner lot with a frontage of 50 feet on Oceanport Avenue, owned by the Monmouth Park Jockey Club, separated Salem Avenue from the Jones property. On or about June 13, 1955 the State Highway Department began construction of a connecting highway known as "Route 36—Joline Avenue Connection." This construction was through and over the Monmouth Park Jockey Club property and part of Salem Avenue, and in its latter stages it entailed physical entry onto a minor portion of the Jones property at its northwest corner where a curb was built by the Highway Department. As a result the Jones property was converted from an inside lot into a corner lot. The Joline Avenue Connection was completed and opened to public use on October 14, 1955. Mr. Erb, principal engineer of the Highway Department, testified that so far as he knew nothing was done between June 13, 1955 and October 14, 1955 to the Jones property except the curbing "at the lower left-hand corner of the Jones property and some grading around the sidewalk area in connection therewith." Mr. Gill, a right-of-way negotiator employed by the Highway Department, testified that Mr. Jones had told him that he would give the corner of his land to the Highway Department if it would forego taking the remainder of his property. Mr. Gill also testified that following discussion with Mr. Jones a signboard on the Jones property extending into the adjacent property which the Highway Department had taken was reduced in size so that it stood entirely within the confines of the Jones property.

On January 3, 1956 the plaintiff State Highway Commissioner filed a condemnation complaint alleging that he had determined to acquire the Jones property for state high-

way purposes and seeking the appointment of condemnation commissioners to fix the compensation to be paid for the taking of the property. An order to show cause was issued and on February 27, 1956 commissioners were appointed. On August 27, 1956 the commissioners fixed the compensation to be paid by the plaintiff at the sum of $15,000. On October 2, 1956 the plaintiff filed notice of appeal and on November 2, 1956 Judge Ewart signed an order which provided that the issue to be tried was the value of the lands taken and the damages if any resulting from such taking to any remaining property "as of January 3, 1956." On March 5, 1957 a pretrial order was prepared and signed by Judge Ascher and counsel for the parties; this order set forth that the plaintiff "demanded trial to determine the issue between the parties hereto as to the value of lands taken and damages if any resulting from such taking to any remaining property as of January 3, 1956." The trial was held before Judge Ewart, sitting without a jury, on June 4–6, 1957 and at its commencement, counsel for the plaintiff stated that the date of the filing of the complaint was controlling and that the trial judge was correct in his view that the proceeding on appeal was "to determine the fair value of the property as of January 3rd, 1956."

During the course of the trial, counsel for the plaintiff suggested that there had actually been a taking of the entire Jones property on June 13, 1955 and that compensation should be fixed on the basis of the condition of the property at that time when it was an inside lot rather than on January 3, 1956 when it was a corner lot. The court ruled that January 3, 1956 was the controlling date but it also stated: "I can't say that I think there is any testimony before me that the State Highway Department took possession of this Jones property in June nor at any time during 1955." In response to this, counsel for the plaintiff urged that the "over-all project," including the curbing at the northwest corner of the Jones property, was completed in 1955 and that there was a taking of the "whole property" at that time. But he made no offer to introduce any additional

testimony to support his position and gave no indication that there was any further supporting evidence available to him. The record fairly indicates that the trial court did not preclude the plaintiff from introducing evidence that there was a taking in 1955. On July 8, 1957 Judge Ewart addressed a letter opinion to counsel in which he advised that he was valuing the property as of January 3, 1956 and that he had fixed its valuation at the sum of $15,000. The plaintiff's appeal from the ensuing judgment rests on the single point that "reversible error was committed by the trial court in failing to determine the value of the defendant's land in the condition it was when the property was taken on June 13, 1955."

█ Where the State Highway Commissioner condemns land for highway purposes he must pay compensation in accordance with constitutional and statutory requirements. See *Constitution* 1947, *Art.* I, *par.* 20; *R. S.* 20:1-1 *et seq.* The proper measure of compensation is generally said to be the fair market value at the time of the institution of his condemnation proceeding. See *R. S.* 20:1-9; *State by State Highway Com'r. v. Cooper,* 24 *N. J.* 261, 268 (1957), *certiorari* denied 355 *U. S.* 829, 78 *S. Ct.* 41, 2 *L. Ed.* 2d 42 (1957); *New Jersey Highway Authority v. Wood,* 39 *N. J. Super.* 575, 579 *(App. Div.* 1956), certification denied 21 *N. J.* 551 (1956). Where the taking coincides with the institution of the condemnation proceeding, this measure of compensation operates justly insofar as both the condemnor and condemnee are concerned. However, where there is a taking followed by a change in the condition of the property before the institution of the condemnation proceeding, different considerations apply. See *North Hudson County R. Co. v. Booraem,* 28 *N. J. Eq.* 450, 455 (*E. & A.* 1877). Under *R. S.* 27:7-22 the State Highway Commissioner is authorized to enter upon and take property in advance of the institution of his condemnation action (see *Abbott v. Beth Israel Cemetery Ass'n. of Woodbridge,* 13 *N. J.* 528, 549 (1953)), although the statute would seem to contemplate no significant delay between the taking and the legal

proceeding. If, after the taking and before the condemnation action, the property is reduced in value because of alterations by the Commissioner or otherwise, the condemnee would justly be entitled to the higher valuation as of the date of taking; this is the view which prevails generally throughout the country (3 *Nichols, Eminent Domain* § 8.5[1] (*3d ed.* 1950)), and it may well be compelled by the constitutional guaranty of just compensation. On the other hand if, after the taking and before the condemnation action, the land increases in value because of alterations by the Commissioner or otherwise, the condemnee would not justly be entitled to the higher valuation; as *Nichols* puts it, any changes in the conditions of the property which take place after the taking "whether they result in an increase or a decrease in the value thereof, cannot affect the amount of the compensation to be paid." See *State by State Highway Com'r. v. Gorga,* 26 *N. J.* 113, 115 (1958). In the *Booraem* case, *supra,* the Court of Errors and Appeals had occasion to discuss the compensation which would be payable where the condemnor enters the owner's property with his consent, makes improvements, and then institutes condemnation proceedings; in the course of his opinion for the court, Justice Depue said:

"The right of the state or its representatives to take property for public uses is unlimited in its scope. It extends to property of every kind and description, and is qualified only by the constitutional prescription that just compensation shall be made. Where a corporation to which such right has been delegated has not been admitted into possession, the value of the land taken and damages as of the date of the commissioners' report, by force of which the title is divested, is the legal rule for ascertaining the damages. *Mettler [Metler] v. E[aston] & A. R. Co.,* 8 *Vr[oom]* 222 [37 *N. J. L.* 222]. But where the company has taken possession by the consent of the owner, and has expended money in the adaptation of the land to the proposed use, and altered and changed its condition, this rule manifestly is not adapted to reach the just compensation contemplated by the constitutional provision. It would obviously be unjust to the owner of the land in many cases to compel him to accept its market value in its altered condition. Suppose the land was valuable for building or farming purposes, and, by reason of cuts and embankments made by the company,

it was rendered intrinsically worthless, it would be unjust to compel the owner to accept as compensation its intrinsic value in that condition. That result would necessarily be reached if the valuation of the land was, under such circumstances, to be made as of the time when the condemnation was effected; for the owner of the land could not legally become invested with the benefits derived from the franchises of the corporation by reason of the location of its road over his land, and the company could choose its own time for the condemnation, and might do so when the land was most depreciated in its market value because of the changes wrought in it. On the other hand, to compel the corporation to pay, as the value of the land, an increased price because of the improvements made by it, would be unjust to it. The owner has no claim in justice to have expenditures for such purposes enure to his benefit. Under such circumstances he is entitled to be paid the damages he has sustained, and nothing more. That will be represented by the value of the land as it was before it was changed in its condition, irrespective of the structure put upon it by the corporation, and interest from that time. Neither in law nor in equity is the owner entitled to anything more."

The respondents suggest that the foregoing views may be applicable in equity but not at law, and they cite *Doremus v. Mayor, etc., of City of Paterson,* 73 *N. J. Eq.* 474, 501 (*Ch.* 1908), and *Trimmer v. Pennsylvania P. & B. Railroad Company,* 55 *N. J. L.* 46, 49 (*Sup. Ct.* 1892). In view of the changes wrought by our 1947 *Constitution* the suggested distinction has lost whatever force it may have had; and while *R. S.* 20:1–9 does refer to the fixing of compensation as of the date of the filing of the condemnation petition (now complaint—*R. R.* 4:92–1) it would seem that, in the light of the constitutional provision for just compensation, the introductory portion of *R. S.* 20:1–1, and the terms of *R. S.* 27:7–22, it may fairly be considered as not controlling where there has been a taking prior to the condemnation action and an intervening change in the condition of the property. In any event, we need not pursue the issue since we are satisfied that the respondents must prevail on their preliminary contention that the plaintiff did not establish a taking prior to January 3, 1956 when the State Highway Commissioner filed his condemnation complaint.

We are not here concerned with the date when the State Highway Commissioner entered upon the construction of

the Joline Avenue Connection or with any then undisclosed purpose on his part to take the entire Jones property. See *Yara Engineering Corp. v. City of Newark,* 136 *N. J. Eq.* 453, 464 *(Ch.* 1945). We are concerned with whether there was an actual taking on June 13, 1955, as he now contends. There was no formal resolution or comparable action or any written communication to the owner which would evidence such taking. And there was no physical taking of the Jones property except at its northwest corner where the curb was built at an unspecified time after June 13, 1955. Mr. Jones had expressed his consent to the taking of this minor portion of his property if the rest was not taken, and there is nothing to suggest that he was ever advised that his tender had been rejected and that the entire property was being taken. Indeed, the contrary is indicated by the reduction of the advertising sign so as to bring it within the confines of his property.

After the Joline Avenue Connection was completed and dedicated to the public on October 14, 1955 nothing was done by the State Highway Commissioner to occupy the Jones property or to transfer possession from its owner, and when condemnation proceedings were finally instituted on January 3, 1956 the pleadings contained no indication whatever that the Commissioner was asserting a taking prior to the filing of the complaint. The pleadings and orders filed prior to the trial all indicated that the taking was as of January 3, 1956, and when, for the first time during the trial, the Commissioner suggested a taking on June 13, 1955, the trial judge clearly expressed his view that there was no supporting evidence to that effect. This expression was never followed by any offer on the part of the plaintiff to produce further pertinent testimony. During the argument of the appeal the contention was advanced that the matter should, even at this late date, be remanded to enable the plaintiff to introduce additional evidence, but in response to inquiry from the court the plaintiff was unable to specify what new testimony, if any, would be available. It seems to us that Judge Ewart's view that the evidence before him

was not sufficient to establish a taking on June 13, 1955 is supported by the record and that, since the plaintiff has fairly been given its day in court, it would not be just to subject the landowner to the expense, delay and inconvenience of further proceedings in the trial court.

The Law Division's order for the entry of judgment erroneously provided for interest from June 13, 1955. It was prepared by the plaintiff and was not sent to the respondents before it was submitted to the trial judge for his signature. The respondents have moved to amend the judgment to provide for interest from January 3, 1956 and their motion is granted. As thus modified the judgment is:

Affirmed.

BURLING, J. (concurring). Originally the commencement of the action preceded the taking. Now, in certain instances by statute, the taking may precede the commencement of the condemnation proceedings. Since the question of the measuring point for compensation in such instances is not necessary to the present disposition, I would defer any intimation thereon until it is reached.

Legislative clarification may be desirable to obviate constructional difficulties. Since I am satisfied that the respondents must prevail on the contention that the plaintiff did not establish a taking prior to January 3, 1956, the date when condemnation proceedings were commenced, I concur in that portion of the majority opinion which disposes of that question and vote to affirm.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—Justice HEHER—1.