119 N.J. Super. 156 (1972)
290 A.2d 461
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF,
v.
MILKON REALTY, INC., A CORPORATION OF NEW JERSEY, SUCCESSOR TO OAKLAND COTTAGE ESTATES, INC., A CORPORATION OF NEW JERSEY, BY CHANGE OF NAME ON JANUARY 21, 1960; STATE OF NEW JERSEY, BOROUGH OF OAKLAND, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS. STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF,
v.
THE TOWNSHIP OF SOUTH HACKENSACK, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 28, 1972.
*157 Mr. William J. McCormack for plaintiff (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Marvin H. Gladstone for defendant Milkon Realty, Inc., etc. (Messrs. Gladstone, Hart, Kronenberg, Mandis, Rathe & Shedd, attorneys).
Mr. Richard L. Rudin for plaintiff (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Ralph W. Chandless for defendant South Hackensack Tp. (Messrs. Chandless, Weller & Kramer, attorneys).
*158 SIMPSON, J.C.C. (temporarily assigned).
In these two condemnation cases the defendant-condemnees seek orders fixing the valuation dates for their respective properties. In the Milkon case both the State and the property owner have appealed from the amount of the award by the condemnation commissioners, while only the State has so appealed in the South Hackensack case. Jury trials have been demanded in both cases, and under the circumstances to be described, it is essential that the motions be decided prior to the trials de novo.
Both cases involve the taking of lands for highway purposes, and it is undisputed that the State has such power of eminent domain. In Milkon the date of actual physical entry was January 1, 1962, and in South Hackensack it was August 1964. The complaints in condemnation were filed by the State on March 6, 1970 for Milkon and October 26, 1967 for South Hackensack. On March 9, 1970 a declaration of taking was filed in Milkon and $1,300 was deposited with the clerk of the court. For South Hackensack the comparable filing date was November 30, 1967, and $250 was deposited. In both cases, therefore, the State had entered and taken physical possession of the respective properties prior to any complaints, declaration of taking, or depositing of estimated valuations in court. Such immediate possession was authorized by N.J.S.A. 27:7-22 prior to the amendment of the statute by L. 1965, c. 79, § 1. Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 549-551 (1953); State, by State Highway Comm'r v. Seaway, Inc., 46 N.J. 376, 378 (1966). Such physical possession constituted "taking" of the properties, State v. New Jersey Zinc Co., 40 N.J. 560, 572-573 (1963), but were not trespasses, and mandamus would lie to compel further condemnation proceedings. Haycock v. Jannarone, 99 N.J.L. 183, 185 (E. & A. 1923).
At about the same time the complaints were filed, orders to show cause why condemnation commissioners should not be appointed (March 9, 1970 for Milkon and October 26, *159 1967 for South Hackensack) were obtained, and on May 11, 1970 and December 19, 1967, respectively, orders were signed appointing such commissioners in both cases. Each order required the fixing of compensation and damages "resulting from the taking * * * as of the date of the commencement of this action * * *." There were no appeals from these orders, and both sides in each case apparently believed the proper valuation dates were the aforesaid dates of filing the complaints. The respective commissioners awarded $8,100 in Milkon and $25,000 in South Hackensack. There had been amendments to the complaints, relative to the properties actually condemned, but these are of no moment as to present issues.
Following the notices of appeal from the awards of the commissioners, but before the trials were calendared, the Eminent Domain Act of 1971 became effective on December 21, 1971. L. 1971, c. 361. Section 4 thereof makes it applicable to all pending actions as well as actions instituted after the effective date. Sections 30, 31 and 32 provide as follows:
30. Date as of which compensation shall be determined.
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee.
31. Payment of interest.
Interest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemnor from the date of the commencement of the action until the date of payment of the compensation; provided, however, that there shall be excluded from the amount upon which interest shall be calculated, all moneys deposited pursuant to Article V hereof; and provided, further, that interest payable hereunder shall be subject to abatement for rents and profits derived from the property by the condemnee during the period for which interest is payable hereunder, and/or for the fair rental value of such property or any portion thereof occupied by the condemnee during such period.
32. Disputes as to interest.
*160 Unless agreed upon by the parties, the amount of such interest shall be fixed and determined by the court in a summary manner after final determination of compensation, and shall be added to the amount of the award or judgment, as the case may be.
In light of the foregoing, the State contends that under § 30(a) the valuation dates are in 1962 and 1964, since possession was then taken. Despite § 31, the State concedes that "in justice" it should pay interest from such dates. The property owners argue that the dates of filing the complaints must control, for a number of reasons, including some asserted to be of constitutional dimension. Although the property owners stated there would be some hardship and difficulty, if required to establish 1962 and 1964 valuations at this late date, it is clear that the real reason they seek the later dates is that inflation and a general increase in real property values from 1962 to 1970 more than offset any carrying charges as to the lands (e.g. taxes, insurance, interest, etc.) during such periods.
The above-cited sections of the Eminent Domain Act of 1971 reflect a legislative solution to problems of determining constitutionally required "just compensation" (N.J. Const. Art. I, par. 20) where the State Commissioner of Transportation (or formerly the State Highway Commissioner) has validly taken possession of lands in advance of paying any compensation or even instituting proceedings to acquire the lands. That legislative clarification of the difficult question of the measuring point for compensation is desirable was long ago recognized by the courts. State, by State Highway Commissioner v. Jones, 27 N.J. 257, 265 (1958) (concurring opinion of Burling, J.). Similarly, as to interest, Milmar Estate v. Fort Lee, 36 N.J. Super. 241, 246-247 (App. Div. 1955), and State, by State Highway Commissioner v. Fisher, 54 N.J. Super. 274, 283 (App. Div. 1959). These and many other problems were studied in depth over the years, as the complete legislative history to the Eminent Domain Act of 1971 reveals. See particularly, *161 Report of Eminent Domain Revision Commission (April 15, 1965).
While the precise question of the validity of § 30 of the Eminent Domain Act of 1971, in the context presented, has not yet been ruled upon by our appellate courts, there can be little doubt that it will be upheld. Although technically dictum, a judicial guidepost appears in State v. Jones, supra:
Where the State Highway Commissioner condemns land for highway purposes he must pay compensation in accordance with constitutional and statutory requirements. See Constitution 1947, Art. I, par. 20; R.S. 20:1-1 et seq., N.J.S.A. The proper measure of compensation is generally said to be the fair market value at the time of the institution of his condemnation proceeding. See R.S. 20:1-9, N.J.S.A.; State by State Highway Com'r v. Cooper, 24 N.J. 261, 268 (1957), certiorari denied 355 U.S. 829, 78 S.Ct. 41, 2 L.Ed.2d 42 (1957): New Jersey Highway Authority v. Wood, 39 N.J. Super. 575, 579 (App. Div. 1956) certification denied 21 N.J. 551 (1956). Where the taking coincides with the institution of the condemnation proceeding, this measure of compensation operates justly insofar as both the condemnor and condemnee are concerned. However, where there is a taking followed by a change in the condition of the property before the institution of the condemnation proceeding, different considerations apply. See North Hudson County R. Co. v. Booraem, 28 N.J. Eq. 450, 455 (E. & A. 1877). Under R.S. 27:7-22, N.J.S.A. the State Highway Commissioner is authorized to enter upon and take property in advance of the institution of his condemnation action (see Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 549 (1953)), although the statute would seem to contemplate no significant delay between the taking and the legal proceeding. If, after the taking and before the condemnation action, the property is reduced in value because of alternations by the Commissioner or otherwise, the condemnee would justly be entitled to the higher valuation as of the date of taking; this is the view which prevails generally throughout the country (3 Nichols, Eminent Domain § 8.5[1] (3d ed. 1950)), and it may well be compelled by the constitutional guaranty of just compensation. On the other hand if, after the taking and before the condemnation action, the land increases in value because of alterations by the Commissioner or otherwise, the condemnee would not justly be entitled to the higher valuation; as Nichols puts it, any changes in the conditions of the property which take place after the taking "whether they result in an increase or a decrease in the value thereof, cannot affect the amount of the compensation to be paid." See State by State Highway Com'r v. Gorga, 26 N.J. 113, 115 (1958). [at 261-262]
*162 The legislative scheme of § 30 is clear, viz., to fix the valuation date of ultimately condemned property as of the time any action by the condemnor may reasonably be deemed to thereafter affect the fair market value thereof. Wide latitude is allowed the Legislature in such a determination, as recently noted in Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 (1971), wherein a statute, declaring that for purposes of condemnation the value of land declared blighted should be fixed at no less than the value as of the date of declaration, was upheld. It is ironic, of course, that in most situations previously presented to the courts and the Legislature the condemnee sought earlier valuation dates because the precipitating events reduced the values of the properties, but the principle remains the same. In the present cases, the condemnees attempt to secure later valuation dates, to reflect the results of inflation and a general increase in land values must fail, as changes in value coming within the "or otherwise" rationale of the Jones case hereinabove quoted. Further indication that the values must be determined as of the date of taking (meaning the date of possession vis-a-vis the date of filing the complaint) is found in Jersey City Redevelopment Agency v. Kugler, supra:
In the ordinary case the generally prevailing view is that if, after the taking and before the condemnation action, the property is reduced in value because of alterations by the public agency or otherwise, the owner would be entitled justly to the higher valuation as of the date of the taking. Cf. N.J.S.A. 27:7-22. As this Court suggested in Jones such rule "may well be compelled by the constitutional guaranty of just compensation." State by State Highway Com'r v. Jones, supra, 27 N.J. at 262. But if, after the taking and before the condemnation action, the property increases in value because of alterations, the owner would not be entitled to the higher valuation. [at 378-379]
Money compensation for condemned property may, in some instances, be imperfect, just as money damages may be an imperfect equivalent for personal injuries in an ordinary accident case. Similarly, in the ordinary contract *163 case, inflation or deflation may decrease or increase the value of the money damages ultimately recovered by one party against another. Ideally, the money representing "just compensation" for condemned property would be substituted therefor at the moment the condemnee lost the practical use or future value of his property, so that presumably he could immediately protect himself against inflation or reinvest in equivalently valued land to participate in any future general increase in real property values. Practically, this is impossible, but there is no resultant constitutional defect in a statute like § 30 of the Eminent Domain Act of 1971. The condemnee is not helpless, of course, because mandamus is available, as already noted, should the condemnor unreasonably delay in the proceedings to effect just compensation. Additionally, interest may well be available and constitutionally required to compensate for inexcusable delay between the date of actual possession and the date of actual payment. State, by State Highway Com'r v. Seaway, Inc., supra, 46 N.J. at 383; N.J. Highway Authority v. Ellis, 24 N.J. 1 (1957). No question as to the validity of § 31 of the Eminent Domain Act of 1971 is presented at this time, however, for two reasons. First, the State has conceded that interest is due in the present cases from the earlier date of possession of the lands in question. Second, the question of interest is to be determined, pursuant to § 32, after final determination of compensation.
Finally, there is no merit in the condemnees' contentions that the latter valuation dates used in the hearings before the condemnation commissioners are binding upon the parties and the court. No case has been cited or located that gives a party a vested right or interest in a clearly erroneous determination in a civil case wherein a trial de novo follows an appeal as of right. Even if the condemnees were correct in their assertion that § 30 changes the applicable valuation date retroactively in the middle of the case, there was no proof of bad faith by the State. Instead, it appears that the incorrect valuation date was used before the Commissioners *164 due to error on the part of both the condemnor and condemnees in both cases.
Accordingly, the valuation dates for the appeals are fixed as the dates of actual physical entry, to wit: January 1, 1962 for Milkon, and August 1964 for South Hackensack.