143 N.J. Super. 338 (1976)
362 A.2d 1312
NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, PLAINTIFF,
v.
GIANT REALTY ASSOCIATES, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 8, 1976.
*343 Mr. William J. Ward for plaintiff.
Messrs Lasser, Lasser, Sarokin & Hochman for defendant Giant Realty Associates (Mr. Sheppard A. Guryan, appearing).
TRAUTWEIN, A.J.S.C.
This case presents the heretofore unanswered question of whether under the Eminent Domain Act of 1971, L. 1971, c. 361, N.J.S.A. 20:3-1 et seq., the date as of which compensation shall be determined can be other than the date of the constitutional taking[1]. The case arises out of activities of the Hackensack Meadowlands Development Commission (HMDC) and the New Jersey Sports and Exposition Authority (Authority) in proposing and condemning the site of the so-called Sports Complex located in East Rutherford. N.J.S.A. 13:17-1 et seq.; N.J.S.A. 5:10-1 et seq. Defendant Giant Realty Associates (Giant) contends that it lost the beneficial use and enjoyment of its meadowland property (Lot 70A, Block 108, Borough of East Rutherford) on June 7, 1972 when HMDC denied Giant certain building and development applications. Giant's property was not subject to the exercise of the power of eminent domain until April 1973, when the Authority commenced the instant condemnation action by filing its complaint and *344 declaration of taking with the court pursuant to N.J.S.A. 20:3-1 et seq.
The instant issue has been raised in the form of a pretrial motion by Giant. It is plain that the court has both the jurisdiction and the duty to hear and decide the issue at this posture of the case. N.J.S.A. 20:3-5. The court has requested and received briefs, affidavits, and oral argument. It has listened to amicus curiae argument and has thoroughly considered the measured contentions of all counsel involved. Based upon all the available legal input the court makes the following findings of fact:
On May 10, 1971 the Legislature of the State of New Jersey enacted the New Jersey Sports and Exposition Authority Law granting the Authority exclusive jurisdiction of a site not to exceed 750 acres in the Hackensack Meadowlands. N.J.S.A. 5:10-1 et seq.
On June 11, 1971, at an executive meeting of HMDC, the Authority requested that HMDC deny, without prejudice, all pending building and subdivision applications in the area of the proposed Sports Complex. HMDC adopted a resolution on that date which instructed its chief engineer to deny the pending applications without prejudice. Giant did not have an application pending on that date.
On December 28, 1971 the first proposed zoning map of HMDC showing the present site of the Sports Complex was released to the public. The property of Giant Realty was indicated as being within the Sports Complex zone on that date. On or about April 1, 1972 Giant applied to the Borough of East Rutherford for a building permit to construct a gasoline service station on the property in question. The building permit was granted by the borough on April 4, 1972. On April 6, 1972 Giant applied the HMDC for the issuance of a zoning certificate and building permit to utilize its property for a gasoline service station.
On May 4, 1972 Giant entered into a 20-year lease with Amerada-Hess Corporation, wherein Hess agreed to lease *345 the instant property from Giant for the operation of a gasoline service station.
On June 6, 1972 Giant filed an order to show cause and complaint in the Superior Court, Chancery Division, seeking to recover damages as a result of HMDC's refusal to permit Giant to utilize the subject property, and seeking to require HMDC to issue a building permit and zoning certificate.
On June 7, 1972 HMDC informed Giant by letter that HMDC had denied Giant's application relying upon the prior policy of HMDC of denying development applications to property owners situated in the Sports Complex zone.
On June 23, 1972 a hearing was held before Judge (now Justice) Pashman and, pursuant to the court's oral opinion, an order was entered dismissing defendant's complaint without prejudice.
On July 28, 1972 defendant filed a notice of appeal to the Superior Court, Appellate Division. On March 22, 1973 the Appellate Division affirmed the judgment of the trial court. Defendant's petition for certification was denied. 68 N.J. 63 (1973).
On April 24, 1973 the Authority instituted the instant eminent domain proceedings by the issuance of an order to show cause and the filing of a complaint and declaration of taking. The Authority also deposited $85,200 with the Clerk of the Superior Court as estimated compensation for the taking. N.J.S.A. 20:3-18.
On June 6, 1974 commissioners were appointed to determine the compensation to be paid Giant for the taking. On April 11, 1975, after conducting hearings, the Commissioners issued their report and rendered an award of $200,800. Both the Authority and Giant have appealed the award of the commissioners pursuant to N.J.S.A. 20:3-13(a) and R. 4:73-6(a).
The date of valuation upon which the commissioners determined the compensation to be paid Giant does not appear from the record, briefs or other papers filed with the court. It is of no consequence, however, what date the *346 Commissioners utilized, since their award is not evidential at the hearing on appeal (trial de novo). N.J.S.A. 20:3-13(b). It is for this court to determine the proper valuation date for use at the trial de novo.
The court is compelled to note, however, that if commissioners' hearings pursuant to N.J.S.A. 20:3-12 are to have any legal and practical significance and not become a mere exercise of futility, the date of valuation must be settled prior to commissioners' hearings. Indeed, if there are any issues to be decided other than that of value and damages, those issues must be presented and decided by the court at the earliest possible juncture. See State v. Orenstein, 124 N.J. Super. 295, 298 (App. Div. 1973).
However, even if the commissioners used an incorrect  or at best contested  valuation date, the court may proceed to settle the issue now without prejudice to both parties. State v. Milkon, 119 N.J. Super. 156, 163-164 (Law Div. 1972). The court is here called upon to construe N.J.S.A. 20:3-30. The statute states:

DATE AT WHICH COMPENSATION SHALL BE DETERMINED.
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee. [Emphasis supplied]
The application of one of the three alternate valuation dates is not altogether free of difficulty. Giant contends that subsection (c) should be invoked, thereby making June 7, 1972 (the date HMDC denied Giant's development application) the date of valuation. The Authority had contended that subsection (b) controls; however, after one round of oral argument the Authority grudgingly conceded that subsection (c) would control the action. The Authority now argues that the earliest substantial effect upon Giant's property occurred on June 11, 1971 (the date of the enactment of *347 HMDC's resolution denying pending development applications) and therefore the property must be valued as of June 11, 1971. For the reasons which follow. I hold that subsection (c) is indeed controlling. However, I decline to find that action by the Authority on June 11, 1971 was the earliest event which substantially affected the use and enjoyment of Giant's property.
The Eminent Domain Act of 1971 had as one of its major objectives the creation of an integrated and uniformly applied procedure to govern the taking of property for public use. Monmouth Cty. v. Wissell, 68 N.J. 35, 38-41 (1975). The Eminent Domain Revision Commission was created in 1962 to suggest revision in the then current Eminent Domain Act, R.S. 20:1-1 et seq. Its report was issued in 1965, and it became the foundation for the Eminent Domain Act of 1971. Monmouth Cty. v. Wissell, supra at 38-39.
The Commission reviewed the practice under R.S. 20:1-9 of assessing compensation "as of the date of the filing of the petition and order thereon." Report, supra at 24. It concluded that "fixing the award * * * as of the date of the filing of the complaint does not constitute adequate compensation." Id. at 25. A cursory reading of Article V of the report might lead one to conclude that the Commission was solely concerned with determining a valuation date in the context of "blighted areas." This conclusion is unwarranted. The Commission suggested a general revision of R.S. 20:1-9, and its discussion of alternate valuation dates is not limited to the blight cases whatsoever.
The dominant theme which runs throughout Article V of the report is addressed to the concept of "freezing" value once an event occurs which precipitates an upward or downward fluctuation in the value of a piece of property to be ultimately condemned. The law of this State is plain: after governmental action has occurred neither an increase nor decrease in value can affect the compensation to be paid. State v. Jones, 27 N.J. 257, 261-262 (1958); State v. *348 S. Nalbone Trucking Co., 128 N.J. Super. 370, 377 (App. Div. 1974); certif. den. 65 N.J. 575 (1974). The Commission recommended that if a governmentally-inspired event occurs prior to the taking which has the effect of increasing or decreasing the value of the property, then that prior date shall become the date of valuation:
The Commission therefore suggests that any increase or decrease in the value of property caused by administrative actions or public announcements of proposed public improvements, (other than that due to physical depreciation within the reasonable control of the owner) shall be disregarded in determining the compensation for the taking, and that compensation shall be fixed as of the date the action of the taking body shall substantially effect the use and enjoyment of the property. [Report at 28.]
It is quite plain upon a comparison of the language of N.J.S.A. 20:3-30(c) and the language of the report that the Legislature adopted the reasoning of the report.
One of the intentions of N.J.S.A. 20:3-30(c) is to protect the condemnee from a decrease in the value of its property which is attributable to the cloud of condemnation placed upon the property by the condemnor. The statute also is designed to insulate the condemnor from the ravages of an inflationary spiral. Theoretically, when a public entity makes public its intention to condemn a piece of property, the value of the property will decrease because prospective purchasers do not want to purchase a potentially defeasible fee. This is most manifest where a municipality declares an area of land "blighted" and prepares for its condemnation and ultimate renewal. The declaration of blight does not per se destroy the beneficial use to the owner. However, it clearly may substantially affect it. Thus, the Legislature protects property owners who find their land declared "blighted" by requiring that the value of any property sought to be acquired shall be fixed and determined to be no less than the fair market value as of the date of the declaration of blight by the condemnor. N.J.S.A. 40:55-21.10; N.J.S.A. 20:3-38. The legislative *349 scheme is quite clear; the analogy between the blight statutes and N.J.S.A. 20:3-30(c) is likewise clear. Both enactments are intended to freeze value as of the date that action is taken by the condemnor which substantially affects the market value of the property.
Subsection (a) of N.J.S.A. 20:3-30 sets the date of valuation as of the date of the taking in the constitutional sense. This date of valuation is determined when the public body either (1) physically invades the property, or (2) deprives the owner of undeveloped land of all beneficial use for a significant period of time. See Washington Market Enterprises v. Trenton, 68 N.J. 107, 117, 118 (1975).[2] In the instant case the June 7, 1972 letter of denial from HMDC to Giant did not amount to a constitutional taking. East Rutherford Industrial Park, Inc. v. State, 119 N.J. Super. 352 (Law Div. 1971). It does not follow, however, that simply because the denial of Giant's development applications did not amount to a constitutional taking, such action cannot be said to have "substantially affected" the use and enjoyment of the property insofar as a determination of a date of valuation is concerned.
Subsection (b) of N.J.S.A. 20:3-30 is the carry-forward of R.S. 20:1-9. The concept of valuing the property as of the date of the commencement of the action is the traditional and often naive point of departure. The use of this date contemplates a rational and organized system in which property is physically appropriated at the moment the condemnor files its complaint and declaration of taking. The real world of condemnation  as depicted in the Commission report  oftentimes finds property physically appropriated months or even years in advance of the institution of formal proceedings. See State v. Milkon Realty, *350 supra. When the public bureaucracy is functioning efficiently, the provisions of subsection (b) are called into play. Unfortunately, it is more often the situation where events transpire prior to the commencement of the action which can substantially affect the property owner's use and enjoyment of his land. When this occurs, subsection (c) applies.
Of course, this court is not solely bound by the provisions of N.J.S.A. 20:3-30 in determining the date of valuation. The benchmarks of eminent domain law are the Just Compensation Clauses of the New Jersey and United States Constitutions: U.S. Const. Amendments V and XIV; N.J. Const. (1947), Art. I, par. 20. The selection of a valuation date is necessarily a component of just compensation, and that selection must comport with the constitutional mandate. The court will return to this issue below.
The problem of selecting the correct date is compounded by the confusion in the case law of this State and among members of the legal profession concerning the definition of a constitutional taking. It has been argued that the date of valuation must be the date of taking. East Orange Housing Auth. v. Leff, 125 N.J. Super. 425, 433 (Law Div. 1973). The use of the word "taking" in this respect is confusing because of the multifarious meanings given the word. This court is persuaded by a review of the available authority that there is an important difference in New Jersey between a constitutional taking and a mere interference with use and enjoyment of property. Furthermore, the court concludes that N.J.S.A. 20:3-30(c) contemplates that a valuation date may be other than the date of the constitutional taking, subject of course to the overall concept of just compensation. Our Supreme Court has recently reviewed the vexatious problem of when governmental action amounts to a constitutional taking. Washington Market Enterprises v. Trenton, supra. In that case the court for the first time recognized that in certain circumstances a de facto taking can occur. In permitting landowners situated in blighted areas to challenge an unconscionable delay *351 in starting eminent domain proceedings by the condemnor, the Supreme Court set down guidelines for trial courts to enable them to determine if a taking of constitutional dimension had occurred, and what, if anything, is required by way of payment of just compensation to the condemnee. The court defined a constitutional taking as one where a claim for just compensation will lie, where governmental action substantially destroys the beneficial use that a landowner has made of property. Id,. 68 N.J. at 122. The court did not disturb other case law, which continues to counsel that governmental exercise of the police power which does not destroy the use and enjoyment of property is damnum absque injuria. See East Rutherford Industrial Park, Inc. v. State, supra, 119 N.J. Super. at 371. Far-Gold Constr. Co. v. Chatham, 141 N.J. Super. 164 (Law Div. 1976).
Before the court turns to analyze the facts of this case within the framework of the statutes and the Constitution, some mention must be here made concerning the relationship between N.J.S.A. 20:3-30(c) and the Just Compensation Clause. The case of Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 (1971), settled the principle that wide latitude is vested in the Legislature for regulation of the manner and method of exercising the power of eminent domain. In that case the court held that amendments to the Blighted Area Act and the Eminent Domain Act were within the constitutional mandate for the payment of just compensation.
The statute here under analysis seeks to do nothing different than the provisions under attack in Jersey City Redevelopment Agency. Subsection (c) merely requires that any governmental stimulus directly related to eminent domain proceedings resulting in diminution or enhancement of value be disregarded in determining just compensation. There is nothing in the Eminent Domain Act of 1971 or in our case law which absolutely requires the date of valuation to be coincidental with the date of constitutional taking. In the ordinary condemnation case the proper basis of *352 compensation is the value of the property as it would be on the date of taking. However, where action by the condemnor directly related to condemnation at an earlier date creates a depreciating threat of or the inflationary reaction to a proposed public project, such date becomes the date of valuation under subsection (c). There is no constitutional infirmity in applying subsection (c), and the court so finds that under the circumstances of this case subsection (c) governs.
The court recognizes one inherent practical danger in its decision today. It is perhaps arguable that this decision will enable condemnors to promulgate public statements concerning potentially condemnable property early on, and later, at condemnation, thus be able to reap the harvest of an early date of valuation and its concomitant inflation-free value of the property. This practical result should not flow from this opinion. N.J.S.A. 20:3-30(c) requires that the condemnor's action substantially affect the use and enjoyment of the property. Mere tentative statements or staged events will not rise to the level of substantially. The court will explicate the parameters of substantiality below.
The court, then, is compelled to search for the earliest event which substantially affected Giant's use and enjoyment of the property. A starting point is April 24, 1973, the commencement of the action. Unless the court is convinced that there is no event prior to April 24, 1973 which substantially affected the instant property, then April 24, 1973 will become the valuation date. Here, however, there are at least three prior dates which arguably substantially affected Giant's property:
June 7, 1972: The denial by HMDC of Giant's development applications.
December 28, 1971: The inclusion of Giant's property into the so-called Sports Complex Zone on HMDC's zoning map.
June 11, 1971: The passage of the HMDC resolution which denied certain development applications to property owners in the meadowlands.
*353 A substantial effect upon the use and enjoyment of property is occasioned when the condemnor takes action which directly, unequivocally and immediately stimulates an upward or downward fluctuation in value and which is directly attributable to a future condemnation. Of course, if no condemnation occurs, the action so taken may be meaningless and is significant in only a limited number of cases. See, for example, Lomarch Corp. v. Englewood, 51 N.J. 108 (1968); Washington Market Enterprises v. Trenton, supra; cf. Kingston East Realty Co. v. State, 133 N.J. Super. 234 (App. Div. 1975); Far-Gold Constr. Co. v. Chatham, supra. The public interest in having the public apprised of impending government action takes precedence over the possible and speculative injury to property rights resulting from the freedom of expression and of the press. East Rutherford Industrial Park v. State, supra.
Judge (now Justice) Pashman forecast the result reached here today when he stated:
It may well be that the plaintiffs are entitled to compensation for the delay [in commencing condemnation proceedings]. It may well be that the Eminent Domain Act of 1971 which became effective December 21, 1971 (N.J.S.A. 20:3-1 et seq.) will determine the date as of which compensation, if any, shall be determined. There are three guidelines:
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially effects the use and enjoyment of the property by the condemnee. (N.J.S.A. 20:3-30)
But in light of the imminence of a final decision and the fixing of the time during which they will be barred from improving or utilizing their properties, that determination must await a later date. [East Rutherford Industrial Park v. State, supra 119 N.J. Super. at 373]
Thus, in order for there to be a substantial effect upon a condemnee's property, there must be a clearly observable and direct interference which is directly related to *354 condemnation. In order to resolve the question of whether action taken on any of the three proffered dates substantially affected Giant's property, this court conducted a hearing at which time both parties presented evidence. The Authority produced a real estate expert, Richard Chaiken, who testified that when HMDC resolved to deny all pending development applications in the area of the Sports Complex site on June 11, 1971, this had the effect of destroying Giant's right to use its property in the impact zone. Thus, contended Chaiken, Giant's property was subject on June 11, 1971 to an action which rendered it essentially valueless, thereby substantially affecting the use and enjoyment thereof. The Authority also produced William McDowell, Executive Director of HMDC, and George Cascino, Chief Engineer of HMDC. These witnesses testified to the fact that as far as HMDC was concerned, all property owners owning land within the proposed Sports Complex site were to be denied any development applications after June 11, 1971. McDowell testified that it was his understanding on June 11, 1971 that the area of land effected by the HMDC resolution was the very site eventually zoned for the Sports Complex on December 28, 1971.
In response to the Authority's witnesses, Giant produced a real estate expert, John O. Lasser, who testified that no event prior to June 7, 1972 (the date HMDC denied Giant's development application) affected the market value of the property. Lasser did testify that the denial of Giant's application by HMDC did have the effect of causing an immediate and direct interference with use and enjoyment of the property, thereby being a substantial effect within the meaning of N.J.S.A. 20:3-30(c).
Lasser testified, further, that the June 11, 1971 action by HMDC had no effect upon Giant's property because no action was taken which directly affected Giant's property. Indeed, Lasser testified that Giant did not even have notice of the HMDC resolution. With regard to action taken on December 28, 1971, Lasser testified that it was his opinion *355 that the preliminary zoning map did have an effect but that it was insubstantial, having no effect in terms of dollars and cents. He stated that the promulgation of the zoning map was insignificant because it was only a preliminary zoning map.
The court has had the opportunity to analyze the testimony of the experts. Neither expert presented market data to support his contentions nor did the experts clearly delineate the effects which they said were visited upon Giant's parcel by the actions of HMDC. What the experts did attempt to do, however, was to come to legal conclusions based upon their expertise. Making legal conclusions is the province of the court and not the experts. Based upon the testimony, such as it is, the court concludes the following. The denial of Giant's development application by HMDC on June 7, 1972 had a substantial effect upon the use and enjoyment of the property.[3] The letter of denial sent by HMDC to Giant's attorneys effectively prohibited Giant's beneficial use of the property. The property was raw land being used for no economic purpose other than perhaps for investment. There is no clearer example of an event which precipitates a fluctuation in the value of vacant property than a denial of a building application. The testimony supports this conclusion and I so find.
However, the court must look to the two other suggested dates  December 28, 1971 and June 11, 1971  to see whether action occurred which substantially affected the use and the enjoyment of the property. Once again, the test to be applied in determining whether a substantial effect occurred is whether action was taken by the condemnor *356 which precipitated a depreciating or inflationary effect on the value of the property and which was directly related to the condemnation.
Turning to the earliest date, June 11, 1971, the court finds that there was no direct, obvious or substantial effect upon defendant's property. The resolution and minutes of HMDC are carefully worded. They refer exclusively to the pending applications and make no mention of any other properties. If HMDC had amended its zoning to wholly preclude development within its jurisdiction in anticipation of condemnation, then the court would be confronted by an entirely different case. Although the testimony of McDowell and Cascino indicate that the June 11, 1971 resolution was intended to become a policy of HMDC to deny all pending and future applications in the Sports Complex zone, there is no evidence that Giant's property was so directly affected on that date. The first zoning map which clearly indicated to the public that Giant was within the Sports zone was not promulgated until December 28, 1971. Regardless of the fact that McDowell and Cascino understood the policy to encompass the entire eventual site of the Sports Complex, there is no evidence that anyone outside of HMDC was aware of the policy. Thus, the action on June 11, 1971 did not have a clear, unequivocal or direct effect upon the property of Giant Realty which is required for it to be characterized as a substantial effect pursuant to N.J.S.A. 20:3-30(c).
The actions taken by the Authority and HMDC in developing a policy of denying the development applications of all property owners in the Sports Complex zone on or about June 11, 1971 is an indication that both the Authority and HMDC were concerned about building and development by private property owners on the parcels which probably would be condemned at some time in the near future. A potential buyer reading the public minutes and resolution of HMDC would certainly be put on its guard with regard to all properties in and around the Sports Complex. At the very least, a prudent purchaser would want to know *357 whether a particular piece of property, for example Giant's property, would be able to be developed in some way. This prudent buyer would necessarily want to see the map containing the site of the proposed Sports Complex and a map showing the proposed condemnation site. It can be said, therefore, that the denial of pending applications did affect Giant by placing potential purchasers or lessees in a more watchful and wary posture. However, the lack of a clear nexus between the HMDC action on June 11, 1971 and Giant's property renders the action not substantial within the meaning of N.J.S.A. 20:3-30(c).
The court must now evaluate the effect of the promulgation and publication of the zoning maps of HMDC in December 1971. On December 28, 1971 HMDC indicated for the first time that Giant's property was indeed in the area of the proposed Sports Complex.[4] At that time the threat of condemnation became greater, and while it was not imminent, it was foreseeable. The placement of Giant's property on a zoning map in the proposed Sports Complex zone was conceded by Lasser to have an effect on the property but it did not precipitate a fluctuation in the value of that property. The attendant publicity concerning the Sports Complex, the general fear of meadowlands owners in this area that their property was under the threat of future condemnation, and the prior resolution of HMDC in denying building applications to owners of properties in this proposed Sports Complex, all add up to the undeniable conclusion that Giant's property was affected on the date of the publication of the map. A prospective purchaser at that *358 time knew that this parcel was earmarked for taking and, as a matter of prudent business, would shy away from purchasing. However, this does not necessarily drive the value of the property temporarily down. Lasser's testimony that the map was insignificant is buttressed by its preliminary characterization. While it is true that a substantial effect upon someone's property could occur if it is placed upon a map which indicates with reasonable certainty that it will be soon condemned, Giant's property was not so indicated until the map was finally approved on November 8, 1972. It would fly in the face of all concepts of reason and good business sense to deny that Giant's property was not affected when it was made public that this property would be in the proposed Sports Complex zone. However, until the map was properly and finally approved on November 8, 1972, it was not a direct, unequivocal, immediate and easily observable interference with the use and enjoyment of the property that is traceable to the condemnation.
The Court finds as a matter of law, therefore, that under N.J.S.A. 20:3-30(c) the date of valuation in this case is June 7, 1972, the date HMDC denied Giant's development application. The date of taking, of course, is April 24, 1973, the date of the commencement of formal eminent domain proceedings. Giant's motion to set the date of valuation as of June 7, 1972 is granted. The Authority's application to set an earlier valuation date is denied.
NOTES
[1] A "taking" is, of course, constitutional law's expression for any sort of publicly inflicted private injury for which the Constitution requires payment of compensation. Michelman, "Property, Utility Fairness: Comments on the Ethical Foundations of `Just Compensation Law,'" 80 Harv. L. Rev. 1165 (1967).
[2] Washington Market Enterprises, supra has created a third "constitutional taking" standard, to wit: where planning for urban redevelopment is clearly shown to have substantially destroyed the beneficial use of the property. Id. at 110.
[3] The court has no difficulty in finding as a matter of fact and law that HMDC acted on behalf of and in the interest of the Authority in this matter. HMDC was the Authority's agent and therefore HMDC's actions are attributable to the Authority. Therefore, the action by HMDC is deemed to constitute action by the condemnor within the meaning of N.J.S.A. 20:3-30(c).
[4] Again, the action of HMDC in promulgating the zoning map which incorporated the parcels to be included in the Sports Complex zone is action attributable to the Authority. It was, of course, at the insistence of the Authority that the particular site was chosen and so zoned for the Complex. Therefore, the publication of the zoning map is deemed to be action taken by the condemnor pursuant to N.J.S.A. 20:3-30(c).