HOUSING AUTHORITY OF THE CITY OF EAST ORANGE, A BODY CORPORATE AND POLITIC, PLAINTIFF, v. FLORENCE LEFF, IRVING LEFF, HER HUSBAND, LINCOLN ELECTRIC PRODUCTS CO., INC., INDUSTRIAL BANK OF COMMERCE, AND CITY OF EAST ORANGE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 10, 1973.

426

*Mr. Edward Stanton,* attorney for plaintiff.

*Mr. Joseph Seidel,* attorney for defendants.

YANOFF, J. S. C., Temporarily Assigned. This case involves the interaction between *N. J. S. A.* 20:1–1 *et seq.* (hereafter "old statute") and the Eminent Domain Act of 1971, *N. J. S. A.* 20:3–1 (hereafter "new statute") which replaced it, effective December 21, 1971.[1]

The issues arise in the following context: On May 7, 1970 an action in eminent domain was instituted by plaintiff ("Authority") pursuant to *N. J. S. A.* 20:1–36. At the same time Authority deposited $40,000 with the clerk, as required by the statute. Under the statute Authority became entitled to an order for possession "not exceeding twenty days after such filing."

By way of context, I find as facts that before institution of the eminent domain action, Lincoln Electric Products Co., Inc., the tenant, was in possession under a lease at the rate of $1,050 a month; that on August 19, 1970 Authority asked tenant to sign a rental agreement at that rate. The person with whom Authority's representative spoke was Leff, one of the owners, and also an officer of tenant corporation. Leff said he neither would pay the rent nor move, but would take the matter to the Supreme Court. However, thereafter, tenant deposited $1,050 in court in escrow. Authority did not move to evict tenant, and tenant did not physically remove its

---

[1]Bank was joined as mortgagee, but in fact the mortgage had been satisfied. City was joined because of possible tax and water liens. Neither of these defendants was party to the trial or any of the appeals in this matter.

property at any time, but did on November 15, 1972, turn over the key to Authority.

Testimony was adduced as to fair rental value. The expert who testified for Authority stated that the property was worth $866.67 a month with utilities, and $546.36 a month without utilities. Owner's expert said the property was not rentable after May 7, 1970. The only evidence in the case was that utilities were not cut off. I find as a fact that the property had a fair rental value of $866.67 a month.

Defendants appealed from Commissioner's award and received a jury award of $54,000.

On January 3, 1972 plaintiff paid an additional $15,085 into court.[2]

I am told that the interest amounts to $4,074.91. I am told also that during the pendency of the proceedings the owner paid in taxes to the City of East Orange the sum of $8,368.09.

Following the institution of the action, owner and tenant vigorously contested Authority's right to condemn. Owner and tenant lost in all courts and pursued the matter so far as to apply for a writ of *certiorari* to the United States Supreme Court, which was denied on April 17, 1972, 405 *U. S.* 1064, 92 S. Ct. 1493, 31 L. Ed. 2d 794.

On November 15, 1972 owner abandoned the personal property remaining on the premises and gave possession to Authority. Authority at no time sought the assistance of the sheriff in obtaining possession. The condemned premises contained a large quantity of personal property which could be classified as either machinery or junk, and which would have cost a large sum to remove. I infer that in light of *American Salvage Co. v. Housing Authority of Newark,* 14 *N. J.* 271 (1954), Authority did not want to run the risk of having to pay for its removal, and of being held responsible for its loss

---

[2] The additional $1,085 was interest on $14,000 from August 18, 1970 to December 30, 1971.

or damage. The net effect of the conduct of the parties was that Authority was delayed in obtaining possession of the condemned land for a period of approximately three years.

Authority now seeks payment to it of the sum of $1,050 plus accrued interest; judgment against tenant in the sum of $28,350 for unpaid rents at the monthly rate of $1,050 for the period October 18, 1970 to November 18, 1972; such other relief as may be necessary to permit it to collect the unpaid rents, including an abatement against the fund in court for the period during which it was deprived of possession.

Defendant's arguments in opposition center upon the following theories:

1. That by reason of sections 11, 19, 22, 23 and 26 of the new statute, Authority had neither title nor right to possession until the United States Supreme Court denied *certiorari* on April 17, 1972. I determine that the new statute is not applicable to passage of title or right to possession, for reasons stated hereafter, and therefore do not discuss these sections.

2. That there should be no abatement of the funds on deposit because it was not owner, but tenant who was in possession, and the fund is the property of owner. Further, that if there be any abatement, it should be limited to interest on the fund.

3. That the court may not enter any general judgment for rent against tenant because that can be done only under section 5 of the new statute (*N. J. S. A.* 20:3–5), reading:

The court shall have jurisdiction of all matters in condemnation, and all matters incidental thereto and arising therefrom, including, but without limiting the generality of the foregoing jurisdiction to determine the authority to exercise the power of eminent domain; to compel the exercise of such power; to fix and determine the compensation to be paid and the parties entitled thereto, and to determine title to all property affected by the action.

It is argued that the new statute must be applied in its entirety, or not at all.

Before resolving these issues, I must refer to section 4 of the new statute (*N. J. S. A.* 20:3–4), which provides:

This act shall take effect immediately following the approval thereof, and shall apply to all actions instituted thereafter, and to all proceedings taken subsequent thereto in all actions pending on such effective date; except that judgments theretofore entered or awards theretofore made pursuant to law from which no appeal is pending on such effective date, shall not be affected by the provision hereof.

If the meaning of this section is that as to all matters in condemnation arising subsequent to the effective date of the new statute, except unappealed judgments, the new statute controls, and defendants' arguments must prevail.

The basic issues here are whether the old statute or the new statute determines when title and the right to possession pass, and whether condemnor may obtain a general judgment against tenant in this action, even though no separate action therefor was instituted. No case has yet determined these problems. While *Wayne Tp. v. Ricmin*, 124 *N. J. Super.* 509 (App. Div. 1973), held that the new statute controlled interest payable on an award, even on a case initiated before its effective date, it did so as to a payment made into court *after* that date. Here $40,000 was paid into court before the new statute came into force. Despite *Wayne Tp.'s* broad definition of the word "proceeding" in section 4, it cannot be considered to have determined the problems involved here.

The issues raised are both substantive and procedural. One of the problems is to separate matters of substance from procedure. This may not be easy. *Busik v. Levine*, 63 *N. J.* 351 (1973).

 The general rule is that as to matters of substance, statutes are ordinarily given prospective effect. In *Kopczynski v. Camden County*, 2 *N. J.* 419 (1949), the court stated:

A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the interest of the Legislature cannot otherwise be satisfied. [at 551]

This principle has been iterated many times, most recently in *Nickell v. Gall*, 49 *N. J.* 186, 189 (1967).

However, in *Neel v. Ball*, 6 *N. J.* 546 (1951), the court said:

This is not true, however, in the construction of statutes relating solely to procedure, and they are generally held applicable to pending proceedings where such application does not have the effect of disturbing vested rights or impairing the obligation of contracts. [at 551]

See also *Nickell, supra,* at 189.

My conclusion is that a distinction must be drawn between those portions of the new statute which affect substance and those which affect procedure, and that defendants are incorrect in their argument that the new statute must be applied to every aspect of the case, or not at all.

██ There is little doubt that under the old statute title vested in the condemnor immediately upon the filing of the declaration of taking and deposit of the money into court, and that the right to possession adhered to title.

*N. J. S. A.* 20:1–36 is clear enough:

From the filing of the said declaration of taking and the deposit in court to the use of the persons entitled thereto of the amount of the estimated compensation stated in said declaration, title to the property described as being taken by said declaration shall vest in the housing authority or redevelopment agency (free from the right, title, interest or lien of all persons), and said property shall be deemed to be condemned and taken for the use of the housing authority or redevelopment agency and the right to just compensation for the same shall vest in the persons entitled thereto. Upon the filing of the declaration of taking, the court shall designate a day (not exceeding twenty days after such filing, except upon good cause shown), on which the persons in possession shall be required to surrender possession to the housing authority or redevelopment agency.

██ Thus, when the new statute became effective, Authority already had title. *State v. New Jersey Zinc Co.,* 40 *N. J.* 560 (1963). Significantly, the property is valued as of the date of its taking. *Jersey City Redevelopment Agency*

*v. Kugler,* 58 *N. J.* 374 (1971). If the new statute controlled, the property should be valued as of date of taking under that statute, not the old statute.

Few things are more matters of substance than passage of title to real estate and right to its possession. *Shack v. Weissbard* 130 *N. J. L.* 472 (Sup. Ct. 1943), aff'd 131 *N. J. L.* 314 (E. & A. 1944).

█ Nothing in section 4 compels the conclusion that the new statute requires divestment of established rights. The word "proceeding" is a term which can apply to all the steps taken in a lawsuit, or to any one of them. *Black's Law Dictionary* (4th ed. 1957), 1368. It cannot be taken to mean that the Legislature intended the new law to apply to a step in the cause even if the result were to deprive condemnor of vested property rights. I therefore conclude that title was vested in Authority prior to December 21, 1971, and was unaffected by the new statute.

█ On the question of when right to possession vested, a short answer is that the court hearing the matter did enter an order for possession on September 29, 1970. This is the law of the case and I am bound by it even if I disagree. *Galler v. Slurzberg,* 27 *N. J. Super.* 139 (App. Div. 1953); *State v. Bell,* 89 *N. J. Super.* 437 (App. Div 1965). But I do not disagree. The right to possession is as much a matter of substance as is passage of title.

█ However, resolution of the question as to whether a general judgment for rent may be entered against tenant in this proceeding involves a question of procedure. Insofar as the new statute deals with matters of substance, it may not be retroactive; to the extent that it involves only procedure, it may, unless the change of procedure injuriously affects the litigant's substantive rights.

█ Since there is an interaction between procedure and substance, and since procedural changes may destroy substantive rights, it is important to determine whether Authority has any right at all for rent or fair value against a tenant in this situation. It is standard New Jersey law that

liability for use and occupation arises only when a landlord and tenant relationship exists. *Brewer v. Conover,* 18 *N. J. L.* 214 (Sup. Ct. 1841); *Van Valkenbergh v. Den ex dem. Rahway Bank,* 23 *N. J. L.* 583 (E. & A. 1851). But the landlord and tenant relationship may arise from occupation under proper circumstances. In *Conover's Ex'rs v. Conover,* 1 *N. J. Eq.* 403 (Ch. 1831), the question was whether one who had occupied a relative's land without payment was liable for use and occupation to the estate. It was held that he was. The court said:

> The occupation of the premises is proved beyond doubt. That the property belonged to the testators is equally true; and it follows as a matter of course, that the party in possession is bound to pay for the use and occupation unless he can show an agreement to the contrary, or some satisfactory reason why he should not be charged. The burden of proof rests upon the defendant. * * * [at 407]

In *Chambers v. Ross,* 25 *N. J. L.* 293 (Sup. Ct. 1885), the court said:

> The law will imply a contract to pay rent from the mere fact of occupation, unless the character of the occupancy be such as to negative the existence of a tenancy. [at 295]

See *Reade v. Bodine,* 2 *N. J. Misc.* 458, 459 (Sup. Ct. 1924). Outside this State there are cases in which an occupant of land was held liable to a condemning authority, either for rent or for use and occupation. In *Redevelopment Agency of Norwalk v. Norwalk Aluminum Foundry Corp.,* 155 *Conn.* 397, 233 *A.* 2d 1 (Sup. Ct. Err. 1967), this was done as to condemnee by way of diminution of the fair value of the occupancy from the price fixed for the property. See *School Dist. of Ogden v. Smith,* 113 *Ark.* 530, 168 *S. W.* 1089 (Sup. Ct. 1914). Where a tenant is the occupant, he must pay rent. *Capitol Monument Co. v. State Capitol Grounds Comm.,* 220 *Ark.* 946, 251 *S. W.* 2d 473 (Sup. Ct. 1952); *Century Investment Corp. v. United States,* 277 *F.* 2d 247 (9 Cir. 1960).

 The fact here is that tenant remained in possession after condemnor, having both title and right to possession, demanded payment. The deposit of $1050 into court is clear indication that tenant understood that compensation was to be paid. In 51C *C. J. S. Landlord and Tenant*, § 11 at 44–45, it is said:

Generally a relation of landlord and tenant may be implied or presumed where there is an occupancy of land under an agreement with the owner to pay rent or accompanied by the payment of rent. However, it is not essential that there be a definite agreement for such payment, and the relation may arise, although the occupant refuses to agree on any particular amount or to pay any sum whatever, if he occupies with the owner's permission and with the understanding that rent would be demanded.

See *Heckman v. Walker*, 167 *Neb.* 216, 92 *N. W.* 2d 548 (Sup. Ct. 1958) ; 4145 *Corp. v. Brown*, 19 *Misc.* 2d 957, 189 *N. Y. S.* 2d 500 (Sup. Ct. 1959). *Lowell Housing Authority v. Save-Mor Furniture Stores*, 346 *Mass.* 426, 193 *N. E. 2d* 585 (Sup. Jud. Ct. 1963), supports the proposition that where the condemning authority gives notice of its interest, a tenant who does not yield possession is liable for use and occupation. Clearly, then, condemnor had a substantive right against tenant which preexisted the 1971 statute, and which could have been maintained in a plenary suit. Section 5 of the new statute does no more than enable condemnor to dispose of the rent claim in the condemnation action. This, in my view, is a matter of procedure only. As to this, the statute operates retroactively. It is significant that this is not a dispossess action under *N. J. S. A.* 2A:18–53, where proof of landlord and tenant relationship is a jurisdictional prerequisite. What is sought here is merely a money judgment. A change in the procedure by which an existing right is enforced creates no constitutional problem. *State v. American-Hawaiian Steamship Co.*, 29 *N. J. Super.* 116 (Ch. Div. 1953) ; *State v. United States Steel Corp.*, 22 *N. J.* 341 (1956). I therefore hold that Authority is entitled to judgment against tenant for the period between that fixed for tak-

ing possession by the order of September 29, 1970, and November 18, 1972.

The problem remaining is whether the judgment shall be at the rate of $1050 or $866.67 a month, the fair rental value. The issue is whether tenant's obligation was created as the result of an express contract or is *quasi*-contractual, implied in law. After Authority set the price of $1050 a month, tenant responded by saying he would neither pay rent nor move. There was thus no explicit agreement to which both parties assented; there was, however, an obligation created by law to pay for use and occupation. *Conover's Ex'rs v. Conover, supra; Lowell Housing Authority v. Save-Mor Furniture, supra.* Fair rental value is payment for use and occupation. Additionally, section 19 of the new statute provides:

\* \* \* If the owner or tenant occupies the property with the condemnor's permission on a rental basis for a short term or for a period subject to termination on short notice, the amount of rent required shall not exceed the fair rental value of the property to a short term occupier.

Thus under the old or new statute the result is the same. I therefore rule that plaintiff may have judgment against tenant at the rate of $866.67 a month for the period in question and that the sum of $1050 already on deposit for rent is to be paid to plaintiff and credited against the judgment.

It is entirely clear that in this case condemnee and tenant were one for all practical purposes. *Lowell Housing Authority v. Save-Mor Furniture, supra,* 346 *Mass.,* at 588, 193 N. E. 2d 585. They had the same lawyer, took the same legal steps, and Irving Leff, one of the owners, is president of tenant corporation. Plaintiff was deprived of use of the property by their joint action. The owner is entitled to only just compensation for what condemnor got. See *Jersey City Development Agency v. Kugler, supra; Redevelopment Agency of Norwalk v. Norwalk Aluminum Foun-*

*dry Corp., supra.* Condemnor got the land minus value of its use and occupation from the date of taking until November 17, 1972. However, this abatement may be applied only as to interest. *N. J. S. A.* 20:1–36. At the rate of $866.67 per month, already determined to be fair rental value, this consumes the entire interest. But to prevent double recovery the interest should be credited on the judgment against tenant. Since Authority is treated as owner from the date of payment of money into court, it should also be responsible for realty taxes paid by owner. This should be taken into account in the judgment, and owner reimbursed by the appropriate body.

A judgment should be entered, consented as to form or upon notice.