**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**APPROX. 21.5969 ACRES OF LAND, PARCEL NO. 14 REMAINDER, NOS. 1, 2 AND 3, ESTATE SMITH BAY, EAST END QUARTER (LINDQVIST BEACH); VIRGIN ISLANDS INVESTMENTS, LLC; HVI VENTURE, LLC; INNOVATIVE TELEPHONE; UNKNOWN OWNERS AND ALL OTHERS CLAIMING AN INTEREST THEREIN, Defendants**

Civil No. 435/2005

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

February 23, 2006

MATTHEW C. PHELAN, ESQ., GABRIELLA HALEY-STASTNY, ESQ., Assistant Attorney Generals, Virgin Islands Department of Justice, St. Thomas, Virgin Islands, *Attorney(s) for the Plaintiff.*

MARIA TANKENSON HODGE, ESQ., RON ADAMS, ESQ. (Pro Hac Vice), Hodge & Francois, St. Thomas, Virgin Islands, *Attorney(s) for the Defendant VII, LLC.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(February 23, 2006)

### I. INTRODUCTION

On August 4, 2005, pursuant to Title 28 V.I. CODE ANN. § 411(1), (9) and Act No. 6505, the Government of the Virgin Islands, (hereinafter "the Government"), filed an action for condemnation of approximately

21.5969 acres of land, located at Parcel No. 14 Remainder, Nos. 1, 2 and 3, Estate Smith Bay, East End Quarter, St. Thomas, Virgin Islands, a/k/a "Lindqvist Beach", together with a check in the amount of Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00). Before entering an Order vesting title to the parcel in question to the Government, the Court, by Order, immediately directed the Government to further elaborate on the qualifications of the appraisers utilized in arriving at the "just compensation" amount to be deposited with the Court. The Defendant, Virgin Islands Investments, LLC, (hereinafter "VII, LLC"), later appeared and filed an extensive objection and opposition to "the taking". The Government filed a reply. The Court heard arguments on the outstanding issues and competing relief requested by the parties. For the reasons that follow, the proposed "quick take" of Lindqvist Beach must be rendered null and void because the Government failed to follow statutory procedure.

## II. FACTS AND PROCEDURAL HISTORY

The facts and documents, as set forth on the record, reflect that on April 22, 2002, the Twenty-Fourth Legislature of the Virgin Islands passed Act No. 6505[1] which appropriated the sum of Three Million and Five Hundred Thousand Dollars ($3,500,000.00) to purchase Parcel No. 14 Remainder, Estate Smith Bay, Nos. 1, 2, and 3, East End Quarter, St. Thomas, U.S. Virgin Islands (hereinafter "Lindqvist" or "Lindqvist Beach").

On May 1, 2003, Defendant V.I. Investments, LLC, a Georgia Limited Liability Company, ("VII, LLC"), recorded a warranty deed, dated March 6, 2003, from The Cove at Smith Bay, LLC[2] in the Office of the Recorder of Deeds, St. Thomas, Virgin Islands. The conveyance, by warranty deed, was for Three Million One Hundred and Fifty Thousand Dollars ($3,150,000.00). On May 1, 2003, HVI, Venture, LLC, a

---

[1]     Act No. 6505, Section 8 reads: The sum of $3,500,000 or so much thereof as may be necessary, is appropriated from the interest earned on bond proceeds in the fiscal year ending September 30, 2002, to purchase Lindqvist Beach on St. Thomas. The sum appropriated shall remain available until expended. (Emphasis added).
[2]     In January 2002, MAFF, Inc. conveyed Lindqvist Beach to the Cove at Smith Bay, LLC, as part of a bankruptcy settlement. The property had been conveyed to MAFF, Inc. by combination of a marshal sale in 1989 and warranty deed. (Runyon Appraisal Report, pg. 23).

Georgia Manager Managed Limited Liability Company, (hereinafter "HVI") recorded a first priority mortgage against Lindqvist Beach, in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00), in the Office of the Recorder of Deeds, St. Thomas, Virgin Islands.[3]

In early 2004, two (2) years after Act No. 6505 was passed into law, the Government commissioned four (4) appraisers to estimate the market value of Lindqvist Beach. Three (3) of the appraisers were licensed, located and operating within the United States Virgin Islands, *to wit:* Kenn Hobson & Associates (hereinafter "Hobson"), By George Appraisals (hereinafter "George"), and Elissa Rock Runyon (hereafter "Runyon"). The fourth appraiser, Tobin Real Estate Advisors, Inc. (hereinafter "Tobin"), was located, and operating from Chicago, Illinois. On November 22, 2002, the Department of Licensing and Consumer Affairs advised Mr. Patrick Tobin, of Tobin Real Estate Advisors, that he was granted a temporary Real Estate Appraiser's license which was limited to the appraisal of Lindqvist Beach. The duration period of Tobin's license was six (6) months. A copy of the license issued to Tobin, license no. 2-060365-2004, was attached as Exhibit 1 to the Plaintiff's *Reply in Response to the Court's December 2, 2005 Order.* A copy of the temporary license submitted reflects that it was issued on February 12, 2004, for the period February 2, 2004 to August 2, 2004; Hobson's license was issued on December 10th, 2003 for the period January 1, 2004 to December 31, 2004; Runyon's license was issued on January 25, 2004 for the period January 26, 2004 to December 31, 2004; and George's license was issued on August 12, 2005 for the period January 1, 2004 to December 31, 2004.[4]

---

[3] Innovative Telephone is also named as a party Defendant based on right-of-way easement, dated July 29, 1980, from Kenneth Lindquist, Elsa A.V. Lindquist, and June Lindquist to Vitelco, (now known as Innovative Telephone), for installing and maintaining poles and cable equipment. The right-of-way easement was recorded August 4, 1980 in Book 21-0, Page 23, No. 2724.

[4] A question was never raised, during the proceedings, about the irregularity of the dates found within George's license. It appears that George's license was issued after an August 5, 2005 Order from the Court that requested the submission of the respective licenses of each appraiser. It is important to note that George's appraisal was the lowest appraisal and, if rendered invalid, would further increase the estimated valuation of "just compensation".

The highest appraised fair market value of Five Million Seven Hundred Thousand Dollars ($5,700,000.00), as of a January 21, 2004 valuation date, for Lindqvist Beach, was from Runyon. The lowest appraised fair market value of Two Million Eight Hundred Thousand Dollars ($2,800,000.00), as of a March 18, 2004 valuation date, for the property, was from George. Hobson submitted an appraised fair market value of Four Million Nine Hundred Thirty-Five Thousand Dollars ($4,935,000.00), with a valuation date of March 13, 2004. Tobin submitted an appraised fair market value of Three Million Dollars ($3,000,000.00) with a valuation date of April 1, 2004 for the property.[5] The average appraised market value of the four (4) appraisals was Four Million One Hundred and Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00). The average appraised market value of the three (3) appraisals, excluding Tobin's appraisals, is Four Million Four Hundred Seventy-Eight Thousand Three Hundred Thirty-Three Dollars and 33/100 ($4,478,333.33).

On August 4, 2005, the Government filed its action for condemnation and declaration of taking of Lindqvist Beach, along with a check in the amount of Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00), ostensibly pursuant to Title 28 V.I. CODE ANN. § 411(1), (9). The declaration of taking proclaimed that title to Lindqvist Beach was vested in the Government in fee simple for public recreational use and for inclusion in the Government's parklands inventory for the People of the Virgin Islands. Additionally, pursuant to Title 28 V.I. CODE ANN. § 416(b) and the incorporated provisions of FED. R. CIV. P. 71A, the Government filed notices and amended notices[6] that were directed to all named defendants in the complaint, along with a *Motion for an Order Vesting Title, Memorandum of Law in Support of Motion for an Order Vesting Title,* and an *Order Vesting Title.*

On August 31, 2005, Defendant VII, LLC appeared and filed its answer contending the following defenses and objections: (1) the lack of proper legislative authority to condemn; (2) the lack of certification by

---

[5] It is significant that both the George and Tobin appraisals were for an amount less than what was paid by the owners a year earlier on March 6, 2003, under the "distressed" circumstances of a bankruptcy settlement. Both appraisals were also less than the first priority mortgage placed on the property by HVI on May 3, 2003.

[6] The notices were amended from the original notices to reflect different addresses for V.I. Investments, LLC and HVI Venture, LLC.

the head of the executive department or agency that the ultimate award, in his opinion, would be within the limits prescribed by the Legislature of the Virgin Islands, pursuant to Title 28 V.I.C. § 421(d); (3) the lack of findings or resolutions that "the taking" is necessary for the potential public uses stated, pursuant to Title 28 V.I.C. § 411; (4) "the taking" does not constitute a public use under the Fifth Amendment of the United States Constitution and Title 28 V.I.C. § 421(a)(5); (5) "the taking" was arbitrary, capricious and made in bad faith; (6) the abuse by the Government in failing to provide sufficient funds to pay the actual fair market value of the subject property; (7) "the taking" of greater quantity and quality of the estate than is necessary for the purposes alleged; (8) the failing to locate property so as to be the most compatible with the greatest public good and least private injury; and (9) estimating just compensation based on stale appraisals. A trial on all issues of compensation was also demanded. A status hearing was held on November 30, 2005. The central issue was whether Tobin held a valid temporary real estate appraiser's license approved by the Real Estate Appraisal Board[7] at the time he appraised the subject matter property. The Government was advised at the hearing and via a December 2, 2005 Court Order, that the Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00) check was placed in safekeeping, by the Clerk of the Court.

On December 9, 2005, the Government contended in its Informational Motion that the temporary appraisal license granted to Tobin was valid, in accordance with Title 27 V.I. CODE ANN. § 436(a)(2), which permits temporary licensure to nonresident appraisers who are "performing an appraisal for a federally regulated transaction". In its Memorandum of Law filed on December 19, 2005, Defendant VII, LLC disputed the Government's claim that the condemnation of Lindqvist Beach fell within the meaning of federally regulated transaction.[8] At a hearing held

---

[7] Information was disclosed that the Lisa Davis, Administrator of Board and Commissions issued a temporary appraisal license to Tobin despite the fact that Title 27 V.I. CODE ANN. § 436(a) authorized only the Real Estate Appraisal Board to approve applicants for temporary appraisal licenses.

[8] Pursuant to Title 27 V.I. CODE ANN. § 433(12), a federally related transaction is defined as "any real estate related financial transaction which: (A) a federal financial institution regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates; and (B) requires the services of an appraiser.

on December 22, 2005, the parties presented arguments on their respective motions.

## III. ANALYSIS

The issues before this Court for resolution are: (1) whether the Government satisfied the purchase requirements under Title 31 V.I. CODE ANN. § 231a *et seq.* before initiating eminent domain/condemnation proceedings; (2) whether the Government exhausted all efforts to "purchase" Lindqvist Beach, as required by Title 31 V.I. CODE ANN. § 231a *et seq.*, before attempting a "quick take" pursuant to Title 28 Virgin Islands CODE ANN. § 411 *et seq.;* (3) whether the type of temporary appraisal license issued to Tobin authorized him to appraise the Lindqvist Beach property; (4) assuming *arguendo,* that the purchase provisions of Title 31 V.I. CODE ANN. § 231a were exhausted, was the Fifth Amendment provisions to the U.S. Constitution, as applied and extended to the Territory by the 1954 Revised Organic Act, as amended, § 3, satisfied; and (5) if no "certification" as required under Title 28 V.I. CODE § 421(d) was executed, could condemnation be effectuated by a "quick take".

### A. The Government did not satisfy the purchase requirements of Title 31 V.I. CODE ANN. § 231a *et seq.* before initiating eminent domain proceedings.

█ Act No. 6505, enacted into law on May 10, 2002, appropriated Three Million Five Hundred Thousand Dollars ($3,500,000.00) for the purchase of Lindqvist Beach. A close scrutiny of Title 31 V.I. CODE ANN. § 231a reflects that its applicability is limited to real property to which the Government is authorized to acquire by **purchase.** Title 31 V.I. CODE ANN. § 231a(a) reads in relevant part:

> In all cases where the Government of the United States Virgin Islands is authorized to acquire real property by purchase or exchange for any public use, *other than by condemnation,* and the Governor shall express in writing his opinion that said real property is needed for a specific public purpose, the Commissioner of Property and Procurement shall appoint three appraisers, who are residents of the United States Virgin Islands, and who, by reason of occupation and experience are acquainted with Virgin Islands real

property values, to severally or jointly make a careful inspection of the land and submit severally to the Legislature and the Commissioner of Property and Procurement a written statement of the value the real estate or right to be acquired, accompanied by a comprehensive statement of the unit prices or factors included or the method used in the computation of the total value. (Emphasis added.)

Section 231a(c) further states:

The offer by the Governor of purchase for any such real property shall provide for the payment of a purchase price not to exceed the average of the values submitted by the three appraisers. If said average of the values submitted by the other appraisers is unacceptable to the private owner, the Commissioner of Property and Procurement may negotiate a price with said owner; provided, however, that in no case shall the negotiated price exceed one hundred twenty-five percent of the average value determined by the appraisers. If no agreement is reached, the matter shall be referred to the Attorney General *who shall cause an action for condemnation of the property to be commenced,* **if authorized by law,** unless the Governor shall otherwise direct. (Emphasis added.)

Section 231a(f) reads: "no conveyance pursuant to this section shall be valid unless approval of the Legislature is obtained prior to conveyance of title". Through Act No. 6505, the Legislature did provide the authorization for the *purchase* of Lindqvist Beach. Although the Government correctly asserted at the December 22, 2005 hearing that Title 31 V.I. CODE ANN. § 231a(a) was applicable, *except* in a condemnation action, the Legislative authorization was only for the *purchase* and not for condemnation of Lindqvist Beach. (*See* December 22, 2005 Hearing Tr. Pg. 8.) As outlined in Section 231a(c), a condemnation action may be commenced by the Attorney General, *if authorized by law,* upon the failure to reach a negotiated agreement with the private property owner. Section 231a, however, distinctly states that its applicability is limited to the acquisition of property by *purchase,* and not by condemnation. The record is devoid of any supplementary enactment of law which authorized the acquisition of Lindqvist Beach other than by the method set forth by Act No. 6505. Moreover, the record

is silent as to any appropriation for the acquisition of Lindqvist Beach other than the $3.5 Million Dollars appropriated in Act 6505. Thus, Title 31 V.I. CODE ANN. § 231a was the only governing body of law for the acquisition of Lindqvist Beach.

## B. The Government did not exhaust all efforts to "purchase" Lindqvist Beach as required by Title 31 V.I. CODE ANN. § 231a before attempting a "quick take" pursuant to Title 28 V.I. CODE ANN. § 411 *et seq.*

Title 31 V.I. CODE ANN. § 231a(a) requires the Commissioner of Property and Procurement to appoint three (3) appraisers, who are residents of the U.S. Virgin Islands and who, by reason of occupation and experience are acquainted with Virgin Islands real estate property values. Section § 231a(c) then authorizes the Government to tender an offer to the record owner of the property it intends to acquire. The initial offer may not exceed the average market value submitted by the three (3) appraisers. If, however, the property owner rejects the offer, the Government is obliged to enter into negotiations with the landowners, but the negotiated price must be capped at one hundred twenty-five percent (125%) of the average value determined by the appraisers. *Id.* If the property owners reject the negotiated figure, then and only then is the Attorney General authorized to commence condemnation proceedings but only after **receiving** authorization by law to do so.

In the case *sub judice,* the Government failed to comply with Title 31 V.I. CODE ANN. § 231a(a). First, the Commissioner of Property and Procurement employed four (4) appraisers instead of three (3) appraisers. Of the four (4) appraisers only Hobson, George, and Runyon were residents of the U.S. Virgin Islands, who held certified general real estate licenses.

Secondly, the Government never extended an offer to purchase Lindqvist Beach to the Defendant VII, LLC. (See December 22, 2005 Hearing, Tr. Pg. 51-52). While the Government contends that it extended an offer to the previous owners of the Lindqvist Beach property, that offer would have been premature, even if made after the enactment of Act No. 6505 in April of 2002, because none of the four (4) appraisals were compiled and completed until 2004, at which time Defendant VII, LLC, had purchased the property since 2003.

Thirdly, the record is silent as to when the initial offer, if any, was made by the Government; the amount of the initial offer, if any; the method the initial offer was computed; the amount of the "negotiated" offer, if any; and whether the owner rejected the "negotiated" offer.

Given the failure to exhaust the provisions of § 231a of Title 31 and the absence of any independent subsequent Act authorizing condemnation proceedings, the attempted "quick take" proceedings can not be sanctioned.

## C. The type of Temporary Appraisal License issued to Tobin did not authorize him to appraise Lindqvist Beach.

In its reply to the Court's December 2, 2005 Order questioning the validity of Tobin's temporary license, the Government cited Title 27 V.I. CODE ANN. § 436(a) as the authority for issuing temporary appraiser licenses. That provision reads:

> Temporary licenses or certifications for such time as determined by the *Board,* **may** be awarded by the Board to nonresident appraisers who:
> (1) are licensed or certified in another state whose standards have been approved by the Appraisal Subcommittee and meet the requirements of Title XI of the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Public Law No. 101-73;
> (2) are performing an appraisal for a federally regulated transaction;
> (3) are conducting business of a temporary nature; and
>
> (4) register with the Real Estate Appraisers Board and pay the required fees determined by the Board.[9] (Emphasis added).

██ Undeniably, the Real Estate Appraisers Board, (hereinafter "the Board"), is charged, pursuant to 27 V.I. CODE ANN. § 435, with the authority to award or deny applications filed by individuals to become licensed or certified real estate appraisers.[10] Tobin's application to the

---

[9] As defined by Title 27 V.I.C. § 433(6), "Board" means the Virgin Islands Real Estate Appraisers Board.
[10] A licensed real estate appraiser may perform appraisals of all properties with a transaction value of up to $250,000 and noncomplex residential with a transaction value

Board, however, was never approved by the Board, its Chairperson, Elissa Runyon or any other member of the Board. Instead, it was granted by Lisa Davis, the Administrator of Boards and Commissions. In view of this statutory deviation, the Government provided minutes of a Board Meeting held on March 20, 1998, where the Board's attempted to delegate its authority to the Administrator to approve temporary appraiser licenses. The authority to issue temporary appraiser licenses to a nonresident appraiser, however, is expressly vested in the Virgin Islands Real Estate Appraisers Board. Title 27 V.I. CODE ANN. § 434(a) states in pertinent part:

> "There is hereby created the Virgin Islands Real Estate Appraisers Board consisting of seven members, appointed by the Governor with the advice and consent of the Legislature. The Board shall be under the Department of Licensing and Consumer Affairs for administrative purposes." (Emphasis added).

Section 434 further elaborates on the special skills and qualifications required of persons named to the Board. The section gives the Board the discretion to: (1) issue temporary licenses or certificates to persons that satisfy the requirements set forth at Title 27 V.I. CODE ANN. § 436; and (2) for duration of time determined by the Board for the temporary license.

> "Temporary licenses or certificates for such time as determined by the Board may be awarded by the Board to nonresident appraisers ...." (Emphasis added).

Title 27 V.I. CODE ANN. § 436(a). Since the statute(s) vested certain discretionary power(s) to the Board and its members are required to possess special skills and certain qualifications to exercise said discretion, their duties can not be delegated.

> "Unless otherwise agreed, authority to conduct a transaction does not include authority to delegate to another the performance of acts incidental thereto which involve discretion of the agent's special

---

of not more than $1,000,000. A certified residential appraiser is authorized to appraise all properties with a transaction value of up to $250,000 and all residential real property consisting of one to four units or of complexity. A certified general real estate appraiser may perform appraisals of all properties.

skill; such authority, however, includes authority to delegate to a subagent the performance of incidental mechanical and ministerial acts. (Emphasis added.)

RESTATEMENT (SECOND) OF AGENCY § 78 (1958).[11] The authority purported to be given to Lisa Davis, the Administrator of Boards and Commissioners, was not ministerial but discretionary in nature, thus, non delegable. As a result, Ms. Davis lacked authority to grant Tobin a temporary appraiser's license.

Moreover, Footnote 10, *supra,* recites three primary classifications of real estate appraisers. Hobson, Runyon, and George all held certified general real estate appraisers licenses which qualified them to perform appraisals of all properties. Tobin, however, simply held a temporary real estate appraiser license.[12] Although Tobin signed his appraisal report as a U.S. Virgin Islands Certified General, pursuant to Title 27 V.I.C. § 439(f), the license issued to him never granted him certified general real estate appraiser classification. (*See* Tobin's Appraiser's Report pg. 32.) Hence, Tobin was not duly licensed to conduct an appraisal of a property with a transaction value over $250,000.

Assuming *arguendo* that the granting of Tobin's license was valid, his submitted appraisal would nevertheless be invalid because Tobin's application for a temporary license was ostensibly approved by Ms. Davis on November 22, 2002 for a six (6) months period. Notwithstanding that limitation, Tobin's license was issued on February 12, 2004, by the Commissioner of Licensing and Consumer Affairs, almost fifteen (15) months after being approved by Ms. Davis. Tobin's appraisal had a valuation date as of April 1, 2004. Clearly, the appraisal was performed beyond the approved six (6) months limitation approved by Davis on November 22, 2002 and the fifteen (15) month lapse in time between the granting of and issuance of the license is not justified.

---

[11] The rule of the common law, as expressed in the restatement of law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the Courts of the Virgin Islands in cases to which they apply, in the absence of local law of the contrary. Title 1, V.I. CODE ANN. § 4.

[12] On Tobin's license, it is typed "real estate appraiser—temporary". Pursuant to Title 27 V.I.C. § 439(e), there is no denotation on whether Tobin is classified as a licensed or certified real estate appraiser.

Next, in a desperate "last ditch" effort to validate Tobin's appraisal, the Government argued that the appraisal, performed by Tobin, was for a federally regulated transaction and thus within the scope of Title 27 V.I. CODE ANN. § 436(a). This contention was maintained, even though, at Footnote 8, *supra*, the definition of a "federally regulated transaction" does not encompass appraisals of local pieces of property to be used for public recreation in the U.S. Virgin Islands. Furthermore, the Government's argument that placing funds in a FDIC-insured bank transforms an ordinary local condemnation action into a federally regulated transaction is ludicrous and devoid of any merit.

**D. Assuming *aguendo* that the purchase provisions of Title 31, V.I. CODE ANN. § 231a *et seq.* were exhausted, the Government nonetheless failed to satisfy the constitutional provisions of the Fifth Amendment and Revised Organic Act of 1954 as Amended at § 3 (48 U.S.C. § 1561).**

The Fifth Amendment of the United States Constitution[13] states, in relevant part, "No person shall ... be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation". Additionally, the Revised Organic Act of 1954, Section 3, reads in part, "Private property shall not be taken for public use except upon payment of *just* compensation ascertained in the manner provided by law". (Emphasis provided). The Fifth Amendment does not bar the government's taking of private property, but restrains its seizure for a "public use" and upon payment of "just compensation". *U.S. v. 6.45 Acres of Land*, 409 F.3d 139, 145 (3d Cir. 2005). The taking of property without "just compensation" is an unconstitutional seizure of property. The Fifth Amendment's "Taking Clause" has been extended and made applicable to the states through the *Fourteenth Amendment. Dolan v. City of Tigard*, 512 U.S. 374, 383, 114 S. Ct. 2309, 2316, 129 L. Ed. 2d 304 (1994). The Fourteenth Amendment § 1 states in relevant part that no "... State (shall) deprive any person of life, liberty, or property, without due process of law ...".

---

[13]  As applied and extended in the Territory of the Virgin Islands by the Revised Organic Act of 1954, as amended § 3, codified at 48 U.S.C. § 1561; reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (preceding V.I. CODE ANN. tit. 1).

██ The factors required for taking property by eminent domain under Title 28 V.I. CODE ANN. § 414 are: (1) that the use to which (property) is to be applied is a use authorized by law; (2) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use; and (3) that the taking is necessary for such use. According to the Declaration of Taking filed by the Government in the case *sub judice,* Lindqvist Beach was being taken for the public recreation and use and inclusion in the Government's parklands inventory for the People of the Virgin Islands which is one of the enumerated uses found at Title 28 V.I. CODE ANN. § 411(9).[14] Thus, the Government met the first restriction of the Fifth Amendment and Title 28 V.I. CODE ANN. § 414 (2) which is the limitation on taking private property for "public use". However, in derogation of Title 28 V.I. CODE ANN. § 414(1), no statute or Act was presented authorizing condemnation or acquisition of Lindqvist Beach other than by **purchase** pursuant to Act No. 6505. See *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 244, 104 S. Ct. 2321, 2331, 81 L. Ed. 2d 186 (1984), where deference is given to the Legislature in its determination on what constitutes a public use.[15]

Although, the Government in this instant action, complied with all complaint and notice requirements set forth at FED. R. CIV. P. 71A(c), and (d) *seq.,*[16] the Government, failed to meet the second restriction of the Fifth Amendment, specifically payment of just compensation to the private property owners. "The guiding principle of just compensation ... is that the owner of the condemned property 'must be made whole but is not entitled to more.'" *United States v. 564.54 Acres of Land,* 441 U.S. 506, 99 S. Ct. 1854, 60 L. Ed. 2d 435 (1979) (emphasis in original).

---

[14] Title 28 V.I. CODE ANN. § 411 reads: Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses: (9) For the acquisition of parks, land for public recreation and significant natural areas as defined in Title 12, chapter 21 of this Code.

[15] Although the *Midkiff* Court ruled a taking for purely private purposes was unconstitutional and void, the Court has since expanded its definition of public use to include urban revitalization through private economic development. *See Kelo v. City of New London, Conn.,* 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

[16] Federal Rules of Civil Procedure 71A is expressly incorporated into the U.S. Virgin Islands condemnation proceedings by Title 28 V.I. CODE ANN. § 416(b) which reads as follows: "Except as provided in this chapter, the procedure in such actions is governed by Rule 71A of the Federal Rules of Civil Procedure."

"Overcompensation is as unjust to the public as under compensation is to the property owner ...". *United States v. 69.1 Acres of Land*, 942 F.2d 290, (4th Cir. 1991).

Just compensation signifies "the fair market value of the property on the date it is appropriated". *Kirby Forest Indus., Inv. v. United States*, 467 U.S. 1, 10, 104 S. Ct. 2187, 2194, 81 L. Ed. 2d 1 (1984) (emphasis added). However, a Court is not bound by statute on the selection of the valuation date, as long as it "comports with the constitutional mandate" of just compensation. *New Jersey Sports and Exposition Authority v. Giant Realty Associates*, 143 N.J. Super. 338, 350, 362 A.2d 1312, 1319 (1976) (where the New Jersey Superior Court looked beyond the statutory valuation date to determine the date in which the constitutional taking in effect destroyed the landowner's use and enjoyment of the subject property as of the assessment date). Here, the Government filed its complaint and declaration of taking on August 4, 2005. It, however, commissioned all four appraisers in early 2004. Runyon's appraisal report's valuation date was January 21, 2004, at an appraised value of Five Million Seven Hundred Thousand Dollars ($5,700,000.00). Hobson's appraisal report's valuation date was March 13, 2004, at an appraised value of Four Million Nine Hundred Thirty-Five Thousand Dollars ($4,935,000.00). George's appraisal report's valuation date was March 18, 2004, at an appraised value of Two Million Eight Hundred Thousand Dollars ($2,800,000.00). Tobin's appraisal report's valuation date was April 1. 2004, at an appraised value of Three Million Dollars ($3,000,000.00). In effect, the Government's estimation of Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00), as just compensation for a 2005 condemnation action is strictly based on appraisals conducted in early 2004. Given the time differential between the performance of the appraisals and the filing of the declaration of taking, the appraisals can best be described as "stale" and cannot constitute a valid estimation of "just compensation" at the time of the "taking".

## E. In the absence of a certification required under Title 28 V.I.C. § 421(d), condemnation by a "quick take" is invalid.

The "quick take" provision of the Condemnation Act found in Title 28 V.I. CODE ANN. § 421(a) provides in pertinent part:

... the Government of the United States Virgin Islands, ... may file in the cause, with the petition or any time before judgment, a declaration of taking for the acquisition and physical delivery of the property sought to be condemned, signed by the person or entity empowered by law to acquire the property described in the petition. Said declaration of taking and physical delivery shall contain or have annexed thereto:

    (1)    A statement of the authority under which and the public use for which said property is taken.

    (2)    A description of the property taken sufficient for the identification thereof.

    (3)    A statement of the estate or interest in the property taken for public use.

    (4)    A plan of the property taken, in cases where the property can be so represented.

    (5)    A statement of the sum of money estimated by said acquiring authority to be just compensation for the property taken.

Upon the filing of said declaration of taking and deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the property in fee simple absolute ... shall vest in the Government of the United States Virgin Islands ... and such property shall be deemed condemned and taken for the use of the Government of the Virgin Islands ... and the right to just compensation for the same shall be ascertained and awarded in said proceeding and established by judgment therein ... (Emphasis added).

Under the "quick take" provision, upon distribution or withdrawal of the estimated compensation for the property, the U.S. Virgin Islands Government may take immediate possession[17] of the property before a trial on the condemnation proceedings and a final judgment on the

---

[17]    In a declaration of taking, title and right to possession passes to the state immediately upon filing and depositing of the estimated just compensation, whereas under the condemnation complaint, title and possession does not occur until judgment is entered by the Court. *State v. Alaska Continental Development Corp.*, 630 P. 2d 977.

amount required for "just compensation".[18] In partial accordance with Title 28 V.I. CODE ANN. § 421, the Government filed its declaration of taking together with a check in the amount of Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00), on August 4, 2005. The amount of the check deposited was the average of the four (4) appraisals. The language of Title 28 V.I. CODE ANN. § 421, however, clearly emphasizes two condition precedents before title is vested in the Government: (1) the filing of a declaration of taking; and (2) the deposit of the estimated just compensation. Upon filing the declaration of taking and depositing the money into the court, title is vested and the right to possession is "adhered to the title". *Housing Authority of the City of East Orange v. Leff*, 125 N.J. Super. 425, 311 A.2d 213 (1973). The Government was put on notice on two separate occasions that the check was not deposited within the Court's treasury, but was being held in safekeeping. The first notice was during the November 30, 2005 hearing when the Court informed the Government that the Clerk of the Court was holding the check for safekeeping. *See* November 30, 2005 Status Hearing Tr. Pg. 5. The second notice was via an Order dated December 2, 2005.[19]

■ Moreover, Title 28 V.I. CODE ANN. § 421(d) states:

> Action under the provisions of this section irrevocably committing the Government of the United States Virgin Islands to the payment of the ultimate award shall not be taken unless the head of the executive department or agency, bureau or instrumentality empowered by law to acquire the property, certifies that he is of the opinion that the ultimate award probably will be within whatever limits are prescribed by the Legislature of the Virgin Islands in connection with the price to be paid. (Emphasis provided.)

Despite the requirements of this section, the Government never certified that the ultimate award would be within the limits prescribed by the Legislature. In fact, the Legislature only appropriated Three Million Five

---

[18] It is important to note, "the preliminary estimate of compensation made on a declaration of taking is not binding as a valuation of the property taken and does not establish a minimum for the final award." 26 AM. JUR. 2D *Eminent Domain* § 270.

[19] For completeness of the record, the Court subsequently learned after making its ruling on December 22, 2005, that the check was actually deposited into the Court's escrow account, despite instructions to the contrary.

Hundred Thousand Dollars ($3,500,000.00) in Act No. 6505.[20] The Government estimated an ultimate award of Four Million One Hundred Eight Thousand Seven Hundred and Fifty Dollars ($4,108,750.00), based on four (4) appraisals (of which no less than one appraisal was invalid). Based on the three (3) remaining appraisals, from the certified general real estate appraisers, the estimated ultimate award would have been Four Million Four Hundred Seventy-Eight Thousand Three Hundred and Thirty-Three Dollars and Thirty-Three cents ($4,478,333.33) or some $369,583.33 more than what was tendered as a deposit for "just compensation." Section 421(d) explicitly states that a "quick take" action **shall not** commence unless the head of the executive department or agency, bureau or instrumentality empowered by law to acquire the property makes such a certification. The record reflects that no statutory required certification was ever made by any authorized executive department or agency head as required by Title 28 V.I. CODE ANN. § 421(d). Thus, the Government was prohibited from proceeding via a "quick take" or by any condemnation action.

## III. CONCLUSION

Eminent domain is the right of the state to take private property for a public use without the owner's consent, conditioned upon the payment of just compensation.[21] The right of eminent domain is an inherent sovereign power but its exercise may be limited by the constitution of the United States or State. 26 AM. JUR. 2D *Eminent Domain* § 3. The power of eminent domain is vested in the legislative branch of government. *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 678, 43 S. Ct. 684, 689, 67 L. Ed. 1167 (1923). "A statute which confers the right to exercise the power of eminent domain is to be strictly construed in the light of the objectives and purposes sought to be attained by its enactment." *National Compressed Steel Corp. v. Unified Government of Wyandotte County/Kansas City*, 272 Kan. 1239, 38 P. 3d 723 (2002).

In the case *sub judice,* the Government failed to comply with the provisions of Title 31 V.I. CODE ANN. § 231a, as well as Title 28 V.I. CODE ANN. § 421 *et seq.* First, the Government did not exhaust all the

---

[20] Again, no other supplementary legislative appropriation authorizing the acquisition or condemnation of Lindqvist Beach was put forth by the Government.

[21] See BLACK'S LAW DICTIONARY, Fifth Edition, 1979.

"purchase" conditions with the record landowners before proceeding to condemnation proceedings. Contrary to Title 31 V.I. CODE ANN. § 231a, the Government: (a) employed four appraisers instead of three appraisers; (b) neglected to tender an initial offer; and (c) neglected to negotiate with the record property owners for the purchase of Lindqvist Beach as directed in Act No. 6505. Second, the approval of Tobin's temporary appraisal license and inclusion of his appraisal to determine the estimated just compensation was insufficient, invalid and contrary to Title 27 V.I.C. § 436(a). Third, while the Government may have met the public use requirements of the Fifth Amendment, it failed to obtain authorization by law to proceed by condemnation as required by Title 31 V.I. CODE ANN. § 231a. Fourth, the amount deposited was based on stale appraisals and an appraisal by at least one unqualified appraiser thereby undervaluing the fair market value of the subject property and just compensation to be awarded to the property owners, even though the defendants would ordinarily have a right to a hearing regarding "just compensation". Finally, the last procedural misstep was the failure to file the statutorily required certification as required in Title 28 V.I. CODE ANN. § 421(d). *A fortiori,* the attempted eminent domain/condemnation proceedings to "quick take" property commonly known as Lindqvist Beach must be *rendered* void *ab initio* for failure to satisfy the statutory prerequisites and constitutional requirements.